Dave JOHNSON, Appellant,

v.

John P. KINDRED, Appellee.

No. 05–07–01395–CV.

Court of Appeals of Texas,
Dallas.

May 29, 2009.

Millard O. Anderson, Jr., McKinney, for appellant.

Kervyn B. Altaffer, Sophia Katherine Palat, Dallas, for appellee.

Before Justices FITZGERALD, RICHTER, and LANG–MIERS.

## OPINION ON REHEARING

Opinion By Justice FITZGERALD.

Appellee John P. Kindred filed a motion for rehearing. We overrule Kindred's motion for rehearing. On our own motion, we withdraw our opinion issued December 11, 2008 and vacate our judgment of that date. The following is now the opinion of the Court.

This is an interlocutory appeal from the denial of appellant Dave Johnson's special appearance. We conclude that Johnson proved that he lacked minimum contacts with Texas. Accordingly, we reverse the trial court's order and render judgment dismissing all claims against Johnson for lack of personal jurisdiction.

### I. BACKGROUND

#### A. Facts

We draw this statement of the facts from appellee John P. Kindred's allegations in his live pleading before the trial court. Kindred owned certain real property located at 1906 Ann, Carrollton, Texas, subject to a note and deed of trust in favor of First Horizon Home Loans. He fell into default, and representatives of a company called All Star Financial, Inc. approached him about assisting him with refinancing to avoid foreclosure. Without Kindred's knowledge, All Star paid the balance of the note. All Star did not secure a new deed of trust from Kindred, and First Horizon executed and filed a release of lien in the property records of Dallas County. Despite this state of affairs, All Star foreclosed on the property in March 2003. Afterwards, First Horizon purported to transfer its note and deed of trust to All Star. In August 2003, Kindred filed a "notice of interest in property" in

the property records of Dallas County. Nevertheless, All Star purported to transfer title to the property to a trust called the "1906 Ann Trust" in September 2003. Johnson is a beneficiary of the Trust.

## B. Procedural history

In October 2003, First Horizon filed this lawsuit against Kindred in County Court at Law No. 3 of Dallas County, seeking a declaratory judgment that would rescind its release of lien and reinstate its deed of trust. Our record is incomplete, but it appears that the Trust intervened as a plaintiff in April 2004. Kindred apparently amended his pleadings to assert counterclaims against the Trust and third-party claims against All Star. Kindred alleges that the Trust transferred the property to Steve Owen in June 2004, and that Owen transferred the property to SO–KH Properties, L.L.C. in September 2005.

In August 2006, Kindred amended his pleadings again to join as new third-party defendants Scott Barlow, who was allegedly the trustee of the Trust, and Johnson, who was the Trust's beneficiary. Johnson, a resident of Iowa, filed a verified special appearance to challenge the trial court's personal jurisdiction over him and later timely filed an affidavit in support of the special appearance. The action was later transferred from County Court at Law No. 3 to the 68th Judicial District Court of Dallas County. Kindred did not file a response to Johnson's special appearance. The district court heard Johnson's special appearance and permitted Kindred to amend his pleadings after the hearing, which he did. After Kindred filed his amended pleading, the trial court denied Johnson's special appearance. Although Johnson requested findings of fact and conclusions of law, none appear in our record. Johnson timely perfected his interlocutory appeal to this Court.

## II. STANDARD OF REVIEW AND BURDEN OF PROOF

On review of an order deciding a special appearance, we review the trial court's factual findings for sufficiency of the evidence, but we review its ultimate conclusion as to the propriety of personal jurisdiction de novo as a conclusion of law. *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores,* 270 S.W.3d 741, 747–48 (Tex.App.-Dallas 2008, pet. denied) (en banc). When the trial court makes no findings of fact, we imply all fact findings that are supported by the evidence in favor of the court's ruling. *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333, 337 (Tex.2009); *Bergenholtz v. Cannata,* 200 S.W.3d 287, 292 (Tex.App.-Dallas 2006, no pet.). Johnson challenges the legal sufficiency of the evidence in this case. As to issues on which he bore the burden of proof in the trial court, he must show that the evidence conclusively established the facts in his favor as a matter of law in order to prevail on his legal-sufficiency challenge. *U.S. Bank Nat'l Ass'n v. Freeney,* 266 S.W.3d 623, 625 (Tex.App.-Dallas 2008, no pet.). As to issues on which he did not bear the burden of proof, he must show that there is no evidence to support the trial court's implied findings. *Maximum Med. Improvement, Inc. v. County of Dallas,* 272 S.W.3d 832, 836 (Tex.App.-Dallas 2008, no pet.). We note that we have no reporter's record from the special-appearance hearing. But Kindred does not argue that any evidence was admitted at the hearing, so we presume that the only evidence before the trial court was the evidence on file in the clerk's record. *Michiana Easy Livin' Country v. Holten,* 168 S.W.3d 777, 783–84 (Tex.2005).

The plaintiff bears the initial burden of pleading jurisdictional facts sufficient to bring the defendant within the

reach of the Texas long-arm statute. *Capital Tech. Info. Servs., Inc.,* 270 S.W.3d at 748. The specially appearing defendant must then negate all bases for personal jurisdiction alleged by the plaintiff. *Id.* If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court had personal jurisdiction over the nonresident defendant. *Assurances Générales Banque Nationale v. Dhalla,* 282 S.W.3d 688, 695–96 (Tex.App.-Dallas 2009, no pet. h.). The plaintiff also bears the burden of proof to the extent it contends that the contacts of another person or entity should be imputed to the defendant. *See, e.g., BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 798 (Tex.2002) (plaintiff bears the burden of proving jurisdictional alter ego).

## III. ANALYSIS

In a single issue, Johnson argues that the trial court erred by concluding that it could exercise jurisdiction over his person.

### A. Law of personal jurisdiction

The Texas long-arm statute reaches as far as due process allows. *Capital Tech. Info. Servs., Inc.,* 270 S.W.3d at 748. Accordingly, a Texas court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

The test for minimum contacts depends on whether the plaintiff's claim relates to the defendant's contacts with Texas. If the claim is not related to the defendant's Texas contacts, then the plaintiff relies on "general jurisdiction" over the defendant, which requires a showing that the defendant has established continuous and systematic contacts with the forum

state. *Id.* at 749. Kindred does not assert that Texas has general jurisdiction over Johnson. Rather, the sole jurisdictional basis pleaded by Kindred is the fact that Johnson was the beneficial owner of the property involved in Kindred's claims. This is an assertion of "specific jurisdiction," i.e., jurisdiction that is established if the defendant's alleged liability arises from or is related to activity conducted within the forum state. The minimum contacts analysis for specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation. *Id.* Specific jurisdiction minimum contacts are present if (1) the defendant purposefully availed himself of the privilege of conducting activities in the forum state, and (2) there is a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 576, 585 (Tex. 2007).

To discern whether a defendant has sufficiently "purposefully availed" himself of a forum, we consider three factors. First, we must disregard any forum contacts that resulted solely from the unilateral activity of another party or a third person. *Michiana Easy Livin' Country,* 168 S.W.3d at 785. Second, we consider whether the defendant's contacts with the forum are "purposeful" rather than "random, isolated, or fortuitous." Random, isolated, or fortuitous contacts are not sufficient to justify haling a defendant into the forum's courts. *Id.* Third, "availment" means that the defendant must have sought some benefit, advantage, or profit by his forum-directed activities and invoked the benefits and protections of the forum's laws in some fashion. *Id.*

Because Johnson's argument on appeal is limited to the minimum contacts prong of due process, we omit discussion of the

second prong of fair play and substantial justice.

## B. Jurisdictional allegations, evidence, and implied findings of fact

Kindred's only jurisdictional allegation against Johnson is that he was, for a time, the beneficial owner of the property in question by virtue of his status as beneficiary of the Trust.

Johnson's affidavit establishes that he is an Iowa resident who has never lived in Texas. He has never maintained a place of business in Texas nor conducted business in Texas. He has never had any employees in Texas. Except for this case, he has never been a party to a legal proceeding in Texas. He has traveled to Texas on only five occasions in his life, and each visit lasted only a few days.

Johnson further attests that he has never owned any real or personal property in Texas, but he also acknowledges that he was a "passive investor" in the Trust. He does not deny Kindred's allegations that he was a beneficiary of the Trust and that the Trust acquired the property in question in September 2003 and transferred the property away in June 2004. Johnson also testifies in his affidavit as follows:

> My involvement with the 1906 Ann Trust was as a passive investor. I was investing with [trustee] Scott Barlow based on his knowledge and experience. The location of the investment property was immaterial to me. The fact the property acquired was in Texas was purely fortuitous.

In the absence of findings of fact and conclusions of law, we imply all findings of fact in favor of the trial court's ruling that are supported by the evidence. At the outset, we conclude that the trial court impliedly found that the property was owned by the Trust from September 2003 until June 2004, and that Johnson was a beneficiary of the Trust during that period. Johnson does not deny that the Trust owned the property involved in this lawsuit, and he essentially concedes that he was a beneficiary of the Trust by admitting that he was a "passive investor" in the Trust. Thus, the trial court reasonably could have concluded that Johnson's denial of owning any real property in Texas meant only that he owned no real property in Texas in his individual capacity. The trial court was entitled to find that Johnson owned an equitable interest in the disputed property in his capacity as Trust beneficiary.

We next consider the three criteria relevant to "purposeful availment," keeping in mind that Johnson generally bore the burden of proof. Because the trial court denied Johnson's special appearance, we may infer that the trial court implicitly found the following: (1) Johnson failed to prove that his ownership interest in the property came about through the unilateral activity of others rather than through his own actions, (2) Johnson failed to prove that his acquisition of an ownership interest in the property was random, isolated, or fortuitous rather than purposeful, and (3) Johnson failed to prove that he did not seek some profit, benefit, or advantage by availing himself of the laws of the State of Texas.

## C. Application of law to the facts

Johnson's appellate argument is limited to the minimum contacts element of the specific jurisdiction test, so we inquire whether the trial court erred in concluding that Johnson purposefully availed himself of this forum by owning an equitable interest in real property in Texas for a short time. *See Moki Mac*, 221 S.W.3d at 576. We conclude that the trial court erred by failing to find that Johnson's evidence, which was unrebutted by any evidence

from Kindred, negated the existence of purposeful availment.

### 1. Whether Johnson's ownership interest in the property resulted from his conduct or the unilateral activity of another

■ The first requirement of purposeful availment is contact with Texas brought about by the defendant and not by the unilateral activity of some other person. *Michiana Easy Livin' Country,* 168 S.W.3d at 785. We conclude that Johnson conclusively negated this aspect of purposeful availment.

Johnson proved that he never owned legal title to the property at issue in this case. As beneficiary, he owned only equitable title to the property, while trustee Scott Barlow owned legal title. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.,* 948 S.W.2d 317, 322 (Tex.App.-Dallas 1997, writ denied).[1] Johnson proved that his involvement with the Trust was as a passive investor, and that he invested with Barlow based on Barlow's knowledge and experience. The only reasonable inference from this affidavit testimony is that Barlow unilaterally selected the property at issue in this lawsuit to invest in. Kindred does not allege Barlow's state of residency, but he alleges that Barlow's address is in California. To impute Barlow's Texas contact to Johnson, Kindred bore the burden of proving that Barlow was Johnson's agent. *IRA Res., Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex.2007) (per curiam). Kindred adduced no evidence of such an agency relationship, so we cannot impute Barlow's conduct to Johnson. *See Perry v. Long,* 222 S.W.2d 460, 467 (Tex.Civ.App.-Dallas 1949, writ ref'd) (noting that trustees are not agents); *see also Taylor v.*

*Mayo,* 110 U.S. 330, 334, 4 S.Ct. 147, 28 L.Ed. 163 (1884) ("A trustee is not an agent."); 1 Austin W. Scott et al., Scott and Ascher on Trusts § 2.3.4 (5th ed. 2006) (distinguishing agents from trustees).

After we issued our opinion in this matter, the Texas Supreme Court decided *Retamco Operating, Inc. v. Republic Drilling Co.,* 278 S.W.3d 333 (Tex.2009), which Kindred argues compels a different conclusion. In *Retamco,* Retamco sued a California company, Republic, in Texas for receiving oil and gas interests located in Texas through what Retamco alleged were fraudulent transfers. *Id.* at 336. The supreme court held that Republic's conduct in purchasing the Texas real property interests amounted to purposeful availment of the privilege of conducting activities in Texas. *Id.* at 341. In its analysis, the court noted that Republic's Texas contacts were not the result of the unilateral actions of another. Rather, "Republic was a willing participant in a transaction with an affiliated Texas company to purchase Texas real property." *Id.* at 340. But the instant case is distinguishable. Johnson's evidence establishes that he was not a "willing participant" in the relevant real-estate transactions, but rather a passive investor who relied on his trustee's knowledge and experience.

Because Johnson proved that his only contact with Texas alleged by Kindred was the result of Barlow's unilateral conduct, the trial court erred by denying Johnson's special appearance. *See CSR Ltd. v. Link,* 925 S.W.2d 591, 595–96 (Tex.1996) (no specific jurisdiction over Australian company that sold asbestos to Johns–Manville in Australia and did not participate in the decision to ship the asbestos to Texas); *Turner Schilling, L.L.P. v. Gaunce Mgmt.,*

---

1. Because no one argues that the Trust is governed by the law of another state, we apply the law of Texas. *See Jack H. Brown &* *Co., Inc. v. Nw. Sign Co., Inc.,* 718 S.W.2d 397, 398 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).

*Inc.*, 247 S.W.3d 447, 456 (Tex.App.-Dallas 2008, no pet.) (contacts by a party other than the defendant "are not relevant to the jurisdictional analysis").

## 2. *Whether Johnson's ownership interest in the property was purposeful*

The second purposeful availment factor is that the defendant's contact with Texas was purposeful rather than random, isolated, or fortuitous. *Michiana Easy Livin' Country*, 168 S.W.3d at 785; *see also Moki Mac*, 221 S.W.3d at 575 (contacts "must be purposeful rather than random, fortuitous, or attenuated"). Although a single contact can satisfy the minimum contacts test if it creates a substantial connection with the forum, a contact that creates only an "attenuated" affiliation with the forum is not sufficient. *Moki Mac*, 221 S.W.3d at 577. We conclude that Johnson also conclusively negated this aspect of purposeful availment.

Johnson proved via affidavit that the location of the investment property was immaterial to him and that the property's location in Texas was "purely fortuitous," which we take to mean he had no influence on Barlow's decision to invest Trust assets in Texas property. The fact that Barlow made this investment unilaterally also suggests that Johnson's relationship to the state through his beneficial property interest is properly characterized as "attenuated." Johnson also proved that he never directly owned any real or personal property in Texas, which tends to show that his equitable interest in the property involved in this case was an isolated circumstance. Kindred adduced no evidence to controvert any of the facts proved by Johnson.

In *Retamco*, the court concluded that Republic's purchase of real-property interests located in Texas was, by its very nature, "not fortuitous." 278 S.W.3d at 339. As the court noted, "the [real] property's location is fixed in this state." *Id.*

But again, *Retamco* is distinguishable. In that case, the nonresident defendant directly received Texas real-property interests in the transactions giving rise to the litigation. In this case, Johnson was a mere trust beneficiary—a passive investor who relied on the knowledge and experience of his trustee to select the Trust's investments. Thus, Johnson's equitable interest in the property involved in this case was "fortuitous" while Republic's direct receipt of Texas real-property interests was not.

Accordingly, we conclude that the trial court erred by failing to find that Johnson's contact with Texas was isolated, attenuated, and fortuitous rather than purposeful. *See CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex.1996) (French manufacturer's sales of two winepresses in Texas, without directing any marketing efforts to Texas, were too isolated to constitute minimum contacts with Texas).

## 3. *Whether Johnson sought a benefit by availing himself of this forum*

Finally, we conclude that the evidence establishes that Johnson did not seek any benefit, advantage, or profit by availing himself of the State of Texas. It is true that Johnson, as beneficiary of the Trust, presumably stood to reap the ultimate benefit of any profits derived from the property, and that the property's value depends in part on the services and legal protections provided to it by the State of Texas and its subdivisions. But "financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State." *Michiana Easy Livin' Country*, 168 S.W.3d at 788 (internal quotations omitted); *see also GJP, Inc. v. Ghosh*, 251 S.W.3d 854, 869 (Tex.App.-Austin 2008, no pet.) ("The bare fact that a

defendant receives some benefit, advantage, or profit from Texas does not necessarily mean that it has purposefully availed itself of the state."). In *Michiana*, the supreme court concluded that a nonresident's sale of a single recreational vehicle to a Texan, based on that Texan's unilateral solicitation of the transaction, was a mere "collateral relation" to Texas. 168 S.W.3d at 787–88. We conclude that Johnson's equitable ownership interest in the property likewise amounted to a mere "collateral relation" to this State on his part because that relationship with Texas stemmed from trustee Barlow's unilateral decision to purchase the property as a Trust asset. Thus, any benefits Johnson derived from Texas's protection of his interest in the property do not stem from a constitutionally cognizable contact with Texas. Those benefits, if any, do not support the existence of purposeful availment.

We recognize that an ownership interest in real property in a particular state will often constitute minimum contacts with that state in litigation over title to that property. As the Supreme Court has indicated,

> when claims to ... property ... are the source of the underlying controversy between the plaintiff and the defendant, it would be unusual for the State where the property is located not to have jurisdiction. In such cases, the defendant's claim to property located in the State would normally indicate that he expected to benefit from the State's protection of his interest.

*Shaffer v. Heitner*, 433 U.S. 186, 207–08, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *see also Potkovick v. Reg'l Ventures, Inc.*, 904 S.W.2d 846, 847 (Tex.App.-Eastland 1995, no writ) ("We conclude that mere ownership of the real property alone is insufficient to bestow *in personam* jurisdiction: the ownership of the real property must be

the subject of the underlying suit."). In *Retamco*, for example, the court concluded that Republic had sought "benefit, advantage, or profit" in Texas by receiving the oil and gas interests located in Texas. 278 S.W.3d at 340. The court further noted that the assignment of the interests to Republic gave it the right to enforce warranties and covenants related to the real property and that Republic had received revenues from and sold some of the property. *Id.*

Nevertheless, the presence of property in a state, without more, does not automatically signify that the defendant has purposefully availed itself of the benefits and protections of state law. Charles W. "Rocky" Rhoades, *The Predictability Principle in Personal Jurisdiction Doctrine: A Case Study on the Effects of a "Generally" Too Broad, but "Specifically" Too Narrow Approach to Minimum Contacts*, 57 BAYLOR L. REV. 135, 172 (2005). For example, the Texas Supreme Court has held that Texas courts lack personal jurisdiction to divide a marital estate when one spouse has unilaterally transported assets into the state and purchased property here and the other spouse is a nonresident who lacks minimum contacts with Texas. *Dawson–Austin v. Austin*, 968 S.W.2d 319, 327 (Tex.1998). Although the facts of this case are different, the salient feature—the absence of purposeful contact with Texas by the nonresident—is the same. Johnson proved that he made a passive investment with a trustee who decided unilaterally to invest the trust funds in Texas real estate. Under those circumstances, Johnson's equitable interest in the property does not amount to a seeking of benefits from Texas rising to the level of purposeful availment.

## D. Conclusion

To be clear, we do not hold that a nonresident trust beneficiary's equitable

interest in Texas real estate can never constitute minimum contacts. If a beneficiary influenced or directed a trustee's purchase of real estate in Texas, the question would be whether such conduct rises to the level of purposeful availment and minimum contacts. In this case, however, Johnson conclusively established that his actions relating to his beneficial interest in the property involved in this litigation did not rise to the level of purposeful availment. Accordingly, the court erred by denying Johnson's special appearance.

■ Kindred argues that we should remand this case for a second hearing if we conclude that the trial court's ruling was against the overwhelming weight and preponderance of the evidence. We conclude, however, that Johnson conclusively established the absence of minimum contacts. Accordingly, we will render judgment of dismissal. *See Counter Intelligence, Inc. v. Calypso Waterjet Sys., Inc.*, 216 S.W.3d 512 (Tex.App.-Dallas 2007, pet. denied) (reversing denial of special appearance and rendering judgment of dismissal because evidence negated minimum contacts); *Hoffmann v. Dandurand*, 180 S.W.3d 340 (Tex.App.-Dallas 2005, no pet.) (same).

### IV. DISPOSITION

We reverse the trial court's order denying Johnson's special appearance and render judgment dismissing all claims against Johnson for lack of personal jurisdiction.