**Affirm in part; Dismiss in part and Opinion Filed November 13, 2013**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-00353-CV

**WAYNE LENSING AND LEFTHANDER MARKETING, INC., Appellants**
**V.**
**DAVID CARD AND CLEO LOWE, Appellees**

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-12-06631**

## OPINION

Before Justices FitzGerald, Francis, and Myers
Opinion by Justice FitzGerald

This is an interlocutory appeal from an order denying a special appearance. Because appellees have nonsuited their claims against appellant Lefthander Marketing, Inc., we dismiss Lefthander's appeal as moot. We affirm the denial of appellant Wayne Lensing's special appearance.

## I. BACKGROUND

### A. Factual allegations

Appellees allege the following facts in their live pleading.

Appellees are the children of Donald and Ida Mae Card. Donald and Ida Mae Card were the sole owners of a historical artifact—a grave marker that had once marked the grave of Lee Harvey Oswald. At some point before 1987, the Cards entrusted the grave marker to Ida Mae's

sister and brother-in-law, Billie and Albert Ragan, for safekeeping. At some point before 2001, the Ragans and appellee Cleo Lowe allowed the Ragans' son, Johnny Ragan, to move the grave marker to his house. Johnny Ragan's wife was Holly Ragan.

Donald and Ida Mae Card died, and ownership of the grave marker passed to appellees. Johnny Ragan also died. Lowe contacted Holly Ragan to get the grave marker back, but Ragan denied having possession of the marker and claimed ignorance of its whereabouts.

In May 2011, appellees learned that a museum in Illinois claimed to be exhibiting the missing grave marker. Appellees conducted an investigation and learned that Heritage Auctions, Inc., a Texas corporation, had facilitated contact between Holly Ragan and appellant Wayne Lensing, an Illinois resident. As a result of the contact, Lensing bought the grave marker from Holly Ragan, and he traveled to Texas to complete the transaction and take possession of the grave marker. Appellees contacted Lensing and demanded the grave marker. He refused, claiming the marker was his.

## B. Procedural history

In June 2012, appellees sued Holly Ragan, Lensing, and an Illinois corporation called Lefthander Marketing, Inc.[1] Lensing and Lefthander filed a special appearance to challenge the court's personal jurisdiction over them. Appellees later amended their petition to add Heritage Auctions, Inc. as a defendant. In that pleading, they asserted claims against Lensing and Lefthander for declaratory judgment, conversion, violation of the Texas Theft Liability Act, and civil conspiracy. Lensing and Lefthander supplemented their special appearance to address appellees' amended pleading, and they filed affidavits in support of their special appearance. Appellees filed a response and a supplemental response to the special appearance.

---

[1] According to Lensing, Lefthander manages the museum that houses Lensing's collection of automobiles and other artifacts, but Lefthander does not own any of the museum's contents.

The trial judge heard the special appearance in November 2012. Appellee David Card testified at the hearing, and several exhibits were admitted into evidence. The judge took the special appearance under advisement, and she later signed an order denying the special appearance. Appellants requested findings of fact and conclusions of law, but none appear in the appellate record.

Appellants timely perfected this interlocutory appeal. After they perfected this appeal, appellees nonsuited their claims against appellant Lefthander, and the trial judge signed an order granting the nonsuit. Accordingly, we will vacate the denial of Lefthander's special appearance, dismiss Lefthander's appeal as moot, and proceed to consider Lensing's appeal only. *See Le v. Kilpatrick*, 112 S.W.3d 631, 633–35 (Tex. App.—Tyler 2003, no pet.).

## II. STANDARD OF REVIEW AND BURDEN OF PROOF

We review the trial judge's determination of a special appearance de novo. *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 748 (Tex. App.—Dallas 2008, pet. denied) (en banc). If the trial judge does not issue findings of fact and conclusions of law, we imply all fact findings supported by the evidence that are necessary to support the ruling. *Id*. The trial judge's implied findings are not conclusive and may be challenged for legal and factual sufficiency on appeal. *Id*.

The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Id*. The specially appearing defendant must then negate all bases of personal jurisdiction that have been pleaded by the plaintiff. *Id*. Alternatively, the defendant can show that even if the facts alleged by the plaintiff are true, the evidence and facts are legally insufficient to establish the propriety of jurisdiction over the defendant. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). If the plaintiff

fails to plead any jurisdictional facts, the defendant carries his burden by proving he is not a resident of Texas. *See id.* at 658–59.

### III.  ANALYSIS

Lensing raises two issues on appeal. In his first issue, he contends the trial judge erred by concluding that appellees sufficiently alleged, and that Lensing failed to negate, the existence of minimum contacts between Lensing and the state of Texas. In his second issue, he contends that the exercise of personal jurisdiction over him violates traditional notions of fair play and substantial justice.

### A.  The law of personal jurisdiction

The Texas long-arm statute reaches as far as due process allows. *Johnson v. Kindred*, 285 S.W.3d 895, 899 (Tex. App.—Dallas 2009, no pet.). Accordingly, a Texas court may exercise personal jurisdiction over a nonresident defendant if (1) the defendant has minimum contacts with Texas and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Id.*

The minimum-contacts test focuses on the question of whether the defendant has purposefully availed himself of the privilege of conducting activities in the forum state. *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). Three principles guide the minimum-contacts analysis. *Johnson*, 285 S.W.3d at 899. First, we must disregard any forum contacts by the defendant that resulted solely from the unilateral activity of another party or a third person. *Id.* Second, the defendant's contacts with the forum state must be purposeful rather than random, isolated, or fortuitous. *Id.* And third, the defendant must have sought some benefit, advantage, or profit from his forum-directed activities and invoked the benefits and protections of the forum's laws. *Id.* The defendant's actions must justify a

–4–

conclusion that he could reasonably anticipate being called into the courts of the forum state. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009).

The test for minimum contacts varies depending on whether the plaintiffs' claims are related to the defendant's contacts with the forum state. *Johnson*, 285 S.W.3d at 899. If the claims are unrelated to the defendant's forum-state contacts, the plaintiff must rely on "general jurisdiction" over the defendant, and the minimum-contacts test requires the defendant to have continuous and systematic contacts with the forum. *See id.*; *see also PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168–69 (Tex. 2007) (discussing general jurisdiction). If the claims arise from or relate to the defendant's forum-state contacts, the plaintiff may rely on "specific jurisdiction," and the minimum-contacts test focuses on the relationship among the defendant, the forum state, and the litigation. *Johnson*, 285 S.W.3d at 899. Specific-jurisdiction minimum contacts are present if (1) the defendant has purposefully availed himself of the privilege of conducting activities in the forum state, and (2) there is a substantial connection between those contacts and the operative facts of the litigation. *Id.* Even a single contact can support jurisdiction, as long as it creates a substantial connection with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 n.18 (1985). Specific jurisdiction must be assessed on a claim-by-claim basis unless, as in this case, all of the plaintiffs' claims arise from the same forum contacts. *See Moncrief Oil Int'l, Inc. v. OAO Gazprom*, No. 11-0195, 2013 WL 4608672, at *4 (Tex. Aug. 30, 2013).

The exercise of personal jurisdiction over a nonresident must also comport with traditional notions of fair play and substantial justice. *Capital Tech. Info. Servs., Inc.*, 270 S.W.3d at 750. Several factors bear on that determination: (1) the burden on the nonresident defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in convenient and effective relief, (4) the interstate judicial system's interest in the most efficient

resolution of controversies, and (5) the shared interest of the several states in furthering substantive social policies. *Id*. These considerations can serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. *Burger King Corp.*, 471 U.S. at 477.

## B.     The jurisdictional allegations, evidence, and implied fact findings

Appellees allege that Lensing is subject to both general and specific personal jurisdiction in Texas. As to specific jurisdiction, appellees allege that Lensing negotiated and contracted with Holly Ragan, a Texas resident, to buy the grave marker, as the result of actions by Heritage Auctions, a Texas-based company. They further allege that Lensing performed the contract, in whole or in part, in Texas, when he traveled to Texas to pay for and take possession of the grave marker. Appellees allege that their claims arise directly from these contacts with Texas.

Lensing filed his own affidavit in support of his special appearance, and the affidavit supports the following facts. Lensing was born and raised in Iowa, and he has lived in Illinois since 1968. He has never lived in Texas or been employed in Texas. He has never maintained a place of business or any employees in Texas. He owns a collection of historic artifacts, which he displays in a museum in Illinois called Historic Auto Attractions. His collection includes items related to several presidents, including President John F. Kennedy. In approximately early 2010, Holly Ragan contacted him by telephone. She claimed that she owned the original headstone that had marked the grave of Lee Harvey Oswald from 1963 to 1967. Lensing and Ragan had several more telephone conversations about the history of the headstone, and she faxed some probate documents to Lensing in Illinois to support her claim of ownership of the headstone. Lensing was in Illinois during the telephone conversations. Eventually, Lensing agreed to buy the headstone from Ragan. Lensing, a licensed pilot, flew his personal airplane to Fort Worth, Texas, where Ragan met him with the headstone. Lensing took the headstone from Ragan's car

and put it on his plane. He spent the night at a motel in Fort Worth and flew back to Illinois the next day. Three documents are attached to Lensing's affidavit. One of the attached documents is the bill of sale signed by both Lensing and Ragan. The date May 4, 2010 is handwritten beneath each of their signatures on the bill of sale.

Lensing also filed an affidavit by Holly Ragan. In that affidavit, Ragan avers that she owned the Oswald grave marker, and she describes the circumstances through which she came to possess the marker. In early 2010, she decided to sell the marker and contacted Heritage Auctions. Heritage Auctions declined to deal with the marker, but it referred her to Lensing. Ragan called Lensing, and they negotiated the sale of the marker. Ragan's description of the mechanics of the sale matches Lensing's description. She specifies that Lensing picked the grave marker up in Fort Worth in early May 2010.

Appellee Card testified briefly at the special-appearance hearing. He did not contradict any of the details of Lensing's account of the Ragan–Lensing transaction.

In his affidavit, Lensing further testified that he has been to Texas on only three occasions in addition to his trip to Fort Worth to pick up the Oswald grave marker. One visit to Texas occurred in 1997 and involved a car race in Houston. The other two visits occurred in 2010. On both occasions, Lensing traveled to Cresson, Texas, and acquired items for his collection, either by loan or by purchase.

In the absence of findings of fact and conclusions of law, we imply all findings of fact that are supported by the evidence in favor of the trial judge's ruling. *Johnson*, 285 S.W.3d at 900. There is little if any disagreement between the facts supported by Lensing's evidence and appellees' specific-jurisdiction allegations. We conclude the trial judge implicitly found that the transaction occurred as described in the Lensing and Ragan affidavits. The evidence also supports an implicit finding that both Lensing and Ragan executed the bill-of-sale document

–7–

while Lensing was in Texas to pick up the grave marker in early May 2010. The trial judge also implicitly found that Lensing traveled to Texas on the other three occasions described in his affidavit. And the trial judge implicitly concluded that Lensing had minimum contacts with Texas and that the exercise of jurisdiction over him would not offend fair play and substantial justice.

**C.       Application of the minimum-contacts test to the facts**

**1.       Sufficiency of appellees' jurisdictional allegations**

Lensing contends that appellees' jurisdictional allegations are so deficient that he carried his burden of proof simply by proving he is not a resident of Texas. We reject this contention. Proof of nonresidency is sufficient only if the plaintiff fails to allege that the defendant committed any relevant acts, even in part, in Texas. *See Kelly*, 301 S.W.3d at 660–61; *see also Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 634 (Tex. App.—Dallas 1993, writ denied) ("Without jurisdictional allegations by the plaintiff that the defendant has committed any act in Texas, the defendant can meet its burden of negating all potential bases of jurisdiction by presenting evidence that it is a nonresident."). Said another way, the plaintiff's burden is to plead only "a connection" between the defendant's alleged wrongdoing and the forum state. *Kelly*, 301 S.W.3d at 655. Appellees alleged that Lensing committed relevant acts in Texas— such as taking possession of the grave marker in Fort Worth, Texas. Thus, Lensing's proof of nonresidency alone did not suffice to defeat personal jurisdiction.

**2.       Purposeful availment**

Lensing contends in the alternative that the evidence negates the existence of minimum contacts. In our minimum-contacts analysis, we disregard any of Lensing's contacts with Texas that resulted solely from the activity of another. Then, with respect to specific jurisdiction, we

consider whether Lensing's own contacts with Texas amount to purposeful availment and whether appellees' claims arise from or relate to those contacts. *Id*. at 899.

We conclude that Lensing's Texas contacts—specifically his flying to Texas and his purchasing and taking possession of the grave marker in Texas before transporting it back to Illinois—amounted to purposeful availment. That is, those acts were purposeful contacts with Texas rather than random, isolated, or fortuitous contacts. *See id*. On at least three occasions, Texas appellate courts have affirmed the existence of personal jurisdiction over nonresidents who came to Texas, took possession of personal property, and either removed the property from Texas or sold it. *See Jake Sweeney Auto. Leasing, Inc. v. Tipton*, No. 04-08-00176-CV, 2008 WL 2743961 (Tex. App.—San Antonio July 16, 2008, no pet.) (mem. op.); *Small v. Small*, 216 S.W.3d 872 (Tex. App.—Beaumont 2007, pet. denied); *Murray v. Murray*, 515 S.W.2d 387 (Tex. Civ. App.—Waco 1974, no writ). Moreover, the Texas Supreme Court has held that specific jurisdiction is proper when a nonresident acquires real property in Texas and the litigation has a substantial connection to that property. *Retamco Operating, Inc.*, 278 S.W.3d at 338–41.

The *Jake Sweeney* case is particularly instructive. That case was a dispute about the ownership of a Hummer limousine. 2008 WL 2743961, at *2. The vehicle was registered in Texas to Eduardo Pena, who owed money to Ohio corporation Jake Sweeney Automotive Leasing. *Id*. Pena called Sweeney and offered to sell Sweeney the vehicle in exchange for a credit against Pena's debt. *Id*. Sweeney accepted the offer and sent someone to Texas to pay an outstanding mechanic's lien and take possession of the vehicle. *Id*. at *3. Ralph and Mary Tipton then sued Sweeney in Texas, alleging that they were actually the rightful owners of the limousine. *Id*. at *1. The trial court denied Sweeney's special appearance, and the court of appeals affirmed. Sweeney argued that its Texas contacts were random, isolated, and fortuitous,

pointing out that those contacts were instigated by the acts of others, especially Pena. *Id*. at *2. But the court of appeals rejected this argument, noting that once Sweeney struck its deal with Pena, Sweeney voluntarily entered Texas, paid the outstanding lien, took possession of the vehicle, and transported it from Texas. *Id*. at *3. These acts manifested "a deliberate and purposeful decision to come to Texas to take delivery and possession of a vehicle [Sweeney] believed it had purchased." *Id*. Moreover, the evidence supported the proposition that Sweeney undertook its contacts with Texas to "obtain a benefit, advantage, or profit." *Id*. Similarly, in this case the evidence supports an implied finding that Lensing made a deliberate and purposeful decision to come to Texas to purchase and take possession of a specific chattel located in this state. And the evidence supports an implied finding that Lensing established his contacts with Texas to obtain the benefit of adding the grave marker to his collection and displaying it in a museum. Thus, *Jake Sweeney* supports the trial judge's conclusion that Lensing established minimum contacts with Texas.

The *Small v. Small* case is also instructive. Virginia resident Shana Mattson became engaged to Brian Small, and Shana traveled to Texas, where Brian's parents gave or loaned Shana a diamond to use in her engagement ring. 216 S.W.3d at 875–76. Shana and Brian married in Virginia and divorced a few years later. *Id*. When Shana refused to return the diamond to Brian's parents, they sued her in Texas for conversion and theft, alleging that the transfer of the diamond had been a loan, not a gift. *Id*. at 876. The trial judge sustained Shana's special appearance, but the court of appeals reversed, holding that Shana's contacts with Texas satisfied the minimum-contacts test for specific jurisdiction. Notably, the court concluded that "[b]y coming to Texas to get tangible personal property owned by Texas residents, Shana purposefully availed herself of Texas law to protect whatever interest she had in the diamond upon its transfer." *Id*. at 878. The same is true of Lensing in the instant case; by coming to

Texas to consummate the sale, he purposefully availed himself of the benefits of Texas law to establish and protect his legal interest in the grave marker.[2]

Lensing relies on *Laykin v. McFall*, 830 S.W.2d 266 (Tex. App.—Amarillo 1992, orig. proceeding) (Boyd, J., with one justice concurring in the result). In that case, Texas resident Jane Livermore contacted California resident Laykin and retained Laykin to sell a ring for her on commission. *Id*. at 268. Livermore sent the ring to Laykin in California. *Id*. Then she sued him in Texas when he allegedly failed to return it to her on request. *Id*. The trial judge overruled Laykin's special appearance, but the Amarillo Court of Appeals granted mandamus relief in Laykin's favor, concluding that he had not availed himself of the privilege of conducting activities in Texas and therefore lacked minimum contacts. *Id*. at 269–71. *Laykin* is readily distinguishable from the instant case because Laykin did not travel to Texas and take possession of the chattel at issue in this state. Lensing did. Because Lensing purposefully traveled to Texas in order to consummate the transaction and take possession of the grave marker, he purposefully availed himself of the privilege of conducting activities in this state.

Lensing contends that minimum contacts are lacking because he did not commit the tort of conversion until he refused appellees' demand for the tombstone, which occurred when he was in Illinois. In this argument, he focuses on his alleged lack of culpability and the allegedly nontortious quality of his actions in Texas. Lensing's focus is misplaced. In *Michiana*, the Texas Supreme Court concluded that personal-jurisdiction inquiries in tort cases must focus on the "physical fact" of the defendant's contacts with Texas without attempting to decide the merits of the case:

> Business contacts are generally a matter of physical fact, while tort liability (especially in misrepresentation cases) turns on what the parties thought,

---

[2] We have found two conversion cases from other jurisdictions that reach similar results. *See Joseph v. Chanin*, 869 So. 2d 738 (Fla. Dist. Ct. App. 2004); *Baker v. Greenlee*, No. C-110779, 2012 WL 3590769 (Ohio. Ct. App. Aug. 22, 2012).

–11–

said, or intended. Far better that judges should limit their jurisdictional decisions to the former rather than involving themselves in trying the latter.

168 S.W.3d at 791. The court went on to disapprove all Texas opinions holding that "specific jurisdiction turns on whether a defendant's contacts were tortious rather than the contacts themselves." *Id.* at 791–92 (footnote omitted); *see also Guarino v. 11327 Reeder Rd., Inc.*, No. 05-12-01573-CV, 2013 WL 4478202, at *6 (Tex. App.—Dallas Aug. 20, 2013, no pet.) (mem. op.) ("The defendant's contacts with Texas—not whether they are tortious—determine whether the exercise of jurisdiction is constitutional."); *Petrie v. Widby*, 194 S.W.3d 168, 175 n.2 (Tex. App.—Dallas 2006, no pet.) ("[I]n reviewing an order denying a special appearance, we do not concern ourselves with the merits of the plaintiffs' claims."). The supreme court recently reiterated that "what the parties thought, said, or intended is generally irrelevant to their jurisdictional contacts." *Moncrief Oil Int'l Inc.*, 2013 WL 4608672, at *1. Thus, Lensing's evidence that he subjectively believed he was buying the grave marker from its rightful owner is irrelevant. And Lensing's argument that he did not complete the tort of conversion, if at all, until after he had returned to Illinois carries no weight in the minimum-contacts analysis. *See Kelly*, 301 S.W.3d at 660–61 (stating that the plaintiff's burden is to plead and, if challenged by the defendant, present evidence that the defendant's relevant acts "occurred, **at least in part**, in Texas") (emphasis added).

Our decision in *Petrie* supports our analysis. In that case, the plaintiffs sued nonresident Petrie for claims including fraud and negligent misrepresentation, and Petrie made a special appearance. 194 S.W.3d at 170–71. The trial judge denied his special appearance, and we affirmed. The evidence showed that the plaintiffs' claims were based at least in part on statements Petrie made to the plaintiffs while he was in Texas. *Id.* at 175. We concluded that Petrie should have realized, from the bare fact that he made representations in Texas, that he could be haled into court here. *Id.* The tortiousness of the representations formed no part of our

analysis, and we specifically stated that we were not concerning ourselves with the merits of the plaintiffs' claims at the special-appearance stage of the case. *Id*. at 175 & n.2. Likewise, in this case we do not consider whether Lensing's Texas activities amounted to a tort or not; we consider only whether they rise to the level of minimum contacts.

Lensing also argues that minimum contacts are lacking because the evidence shows that he was unaware of appellees' claims or even appellees' existence when he acquired the grave marker. He emphasizes that he could not have anticipated that this litigation would be brought against him by "complete strangers." But in the context of specific jurisdiction, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum state, and the litigation, *Johnson*, 285 S.W.3d at 899, and not on the relationship between the defendant and the plaintiff. This litigation is essentially a dispute about who actually owns a specific chattel. Texas's relationship to the dispute is plain, given that the chattel was in Texas every time it allegedly changed ownership. Lensing purposefully availed himself of the privilege of doing business in Texas by traveling to Texas for the transaction by which he allegedly acquired the chattel, and his acts of taking possession of and removing the chattel bear a strong relationship to this litigation as well.

Thus, we conclude that, under the implied fact findings, Lensing purposefully established contacts with Texas. We also conclude that he sought some benefit, advantage, or profit from his Texas-directed activities and invoked the benefits and protections of Texas's laws in some fashion. Lensing's evidence indicates that he sought to acquire the grave marker for the purpose of displaying it as part of his collection in Illinois, which constitutes a benefit, advantage, or profit. And he purposefully availed himself of Texas law to protect whatever interest he acquired in the grave marker upon its transfer. *See Small*, 216 S.W.3d at 878.

We uphold the trial judge's determination that the purposeful-availment prong of the minimum-contacts test is satisfied in this case.

### 3. Substantial connection

The other half of the minimum-contacts analysis for specific jurisdiction is whether there is a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007). Lensing does not appear to be challenging the substantial-connection part of the minimum-contacts test in this appeal, but to the extent he does so, we reject that challenge. Rightful ownership of the grave marker is at the heart of this case, and facts bearing on that ownership will be operative facts in the litigation. Thus, the acts Lensing committed while in Texas ostensibly giving him title to the grave marker have a substantial connection to the operative facts of the case.

### 4. Conclusion

Based on the implied fact findings that are supported by the evidence, the trial judge correctly concluded that Lensing failed to negate the existence of minimum contacts sufficient to support specific jurisdiction in this case. Accordingly, we need not consider the sufficiency of his contacts under a general-jurisdiction theory. We reject Lensing's first issue on appeal.

## D. Fair play and substantial justice

In his second issue on appeal, Lensing contends that the exercise of personal jurisdiction over him is unconstitutional because it would violate traditional notions of fair play and substantial justice. If the defendant has purposefully established minimum contacts with the forum state, the exercise of jurisdiction over the defendant will rarely offend fair play and substantial justice. *See Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991). These rare cases usually involve international defendants.

*Flanagan v. Royal Body Care, Inc.*, 232 S.W.3d 369, 378 n.8 (Tex. App.—Dallas 2007, pet. denied). The defendant bears the burden of presenting a compelling case that some factor or consideration would render jurisdiction unreasonable. *Petrie*, 194 S.W.3d at 176.

Lensing argues that the exercise of jurisdiction over him would offend fair play and substantial justice because his contacts with Texas are so few and because he should not have to travel to Texas to defend himself against unforeseeable claims brought by persons who were unknown strangers to him at the time of the relevant transaction.

We disagree. The considerations relied on by Lensing are not factors that are usually considered in the fair-play analysis. In that analysis we ordinarily consider such factors as the burden on the defendant, the interest of the forum state in the dispute, the plaintiffs' interest in convenient and effective relief, the interest of the interstate judicial system, and the states' shared interest in furthering fundamental social policies. *Guardian Royal*, 815 S.W.2d at 231. Lensing adduced no evidence that litigating in Texas will be especially burdensome for him. Texas has an interest in adjudicating claims by its citizens that they have been wrongfully deprived of their property. Appellees have an interest in being able to litigate this controversy one time in a single, convenient forum, rather than litigating it with Ragan in Texas and with Lensing in Illinois. Similarly, the interests of the interstate judicial system will probably be advanced by not breaking this litigation up into multiple lawsuits in different states, and Texas would seem to be the natural forum in terms of the location of the witnesses, the location of most of the relevant events, and the probable source of substantive law governing the case. The final factor, the states' shared interest in advancing substantive social policies, does not seem to carry any weight in this case.

In light of the foregoing, we conclude that Lensing did not make a compelling showing that the exercise of personal jurisdiction over him would offend fair play and substantial justice.

## IV.  CONCLUSION

We vacate the order denying appellant Lefthander Marketing, Inc.'s special appearance, and we dismiss Lefthander's appeal as moot.  We affirm the denial of appellant Wayne Lensing's special appearance.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
130353F.P05                                                      JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

WAYNE LENSING AND LEFTHANDER
MARKETING, INC., Appellants

No. 05-13-00353-CV      V.

DAVID CARD AND CLEO LOWE,
Appellees

On Appeal from the 298th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-12-06631.
Opinion delivered by Justice FitzGerald.
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, we **AFFIRM** the trial court's March 4, 2013 Order Denying Defendants' Special Appearance with respect to appellant Wayne Lensing. We **VACATE** the trial court's March 4, 2013 Order Denying Defendants' Special Appearance with respect to appellant Lefthander Marketing, Inc. and we **DISMISS** this appeal as to appellant Lefthander Marketing, Inc.

It is **ORDERED** that appellees David Card and Cleo Lowe recover their costs of this appeal from appellant Wayne Lensing.

Judgment entered November 13, 2013

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE