**Affirmed and Opinion filed August 30, 2018.**



In The

# Fourteenth Court of Appeals

### NO. 14-17-00880-CV

### ASCENTIUM CAPITAL LLC, Appellant

### V.

### HI-TECH THE SCHOOL OF COSMETOLOGY CORP., JOSEPH R. LICCI, COSMETOLOGY CAREER CENTER, L.L.C., AND C323, LLC, Appellees

**On Appeal from the 113th District Court
Harris County, Texas
Trial Court Cause No. 2015-74175**

## O P I N I O N

In this appeal from the grant of a special appearance, plaintiff Ascentium Capital LLC argues that defendant C323, LLC's principal place of business is in Texas, and thus, the trial court erred in concluding that it lacked general jurisdiction over the company. Because there is conflicting evidence on the subject, we conclude that the trial court did not abuse its discretion in granting C323's special appearance

and dismissing the claims against it. We accordingly affirm the trial court's judgment.

## I. BACKGROUND

Appellant Ascentium Capital LLC's predecessor in interest loaned "Hi-Tech the School of Cosmetology Corp." money to buy equipment to run a cosmetology school in Florida. Hi-Tech then sold its assets to appellee C323, LLC and defaulted on the loan. C323 now operates the cosmetology school at the same location and using the same assets previously used by Hi-Tech. C323 also hired Hi-Tech's shareholder and former president Hector Gonzalez as "campus manager."

C323 is a limited liability company organized under Florida law, and the cosmetology school is its only business. The company is owned by its three manager-members. John Turnage, a Texas resident, is chief executive officer of the company. The two remaining manager-members, Charles Riser and Steve Pollak, live respectively in Maryland and North Carolina.

To recover on the debt, Ascentium filed suit in a Harris County district court against Hi-Tech, C323, and the loan guarantors. As the basis of general personal jurisdiction over C323,[1] Ascentium alleged that the company's "principal address" is in Texas; that the company is both a resident of Texas and does business in Texas; and that the webpage of the Florida Department of State's Division of Corporations lists Texas addresses for two of the company's three managers. Ascentium also pleaded that the C323 may be served by serving Turnage in Texas.

C323 filed a special appearance contesting the court's exercise of general personal jurisdiction and asserting that its principal place of business is in Florida. In support of the special appearance, Gonzalez attested that the company's

---

[1] Ascentium alleged only general jurisdiction, not specific jurisdiction.

operations are located entirely in Florida and that the address stated on the documents on which Ascentium relies is merely the address of one of the company's shareholders.

The trial court granted the special appearance and dismissed the claims against C323 without issuing findings of fact and conclusions of law.[2] Ascentium now appeals that ruling.

## II. GOVERNING LAW

The Texas long-arm statute "extends Texas courts' personal jurisdiction 'as far as the federal constitutional requirements of due process will permit.'" *M & F Worldwide Corp. v. Pepsi-Cola Metro. Bottling Co.*, 512 S.W.3d 878, 885 (Tex. 2017) (quoting *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). Federal due-process requirements are satisfied if (a) the nonresident defendant has "minimum contacts" with the forum state, and (b) the court's exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Walden v. Fiore*, –U.S.–, 134 S. Ct. 1115, 1121, 188 L. Ed. 2d 12 (2014)).

The principle underlying minimum-contacts analysis is that "[t]he defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *M & F Worldwide*, 512 S.W.3d at 886 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). A defendant has established minimum contacts with the forum state if it has "purposefully avail[ed] itself of the privilege of conducting activities within the

---

[2] Ascentium initially requested findings of fact and conclusions of law, but abandoned the request by failing to file a notice of past due findings as required by the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 297.

forum state, thus invoking the benefits and protections of its laws." *Id.* (quoting *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013)). When determining whether the defendant has purposefully availed itself of the privilege of conducting activities in Texas, three rules are paramount. First, only the defendant's contacts are relevant, not the unilateral activity of someone else. *See id.* (citing *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005)). Second, the defendant's acts must be purposeful and not random or fortuitous. *See id.* And, third, the defendant "must seek some benefit, advantage, or profit by 'availing' itself of the jurisdiction" such that it impliedly consents to suit in the forum state. *Id.* (quoting *Michiana*, 168 S.W.3d at 785).

The minimum contacts sufficient to establish personal jurisdiction varies depending on whether general jurisdiction or specific jurisdiction is alleged. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) (pointing out that the burden borne by a defendant who files a special appearance is to "negate all bases of personal jurisdiction alleged by the plaintiff"). Here, only general jurisdiction is at issue.

A court may exercise general jurisdiction over a defendant limited liability company if the company was organized under the law of the forum state or has its principal place of business there. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (explaining that a corporation's place of incorporation and principal place of business are the "paradig[m] . . . bases for general jurisdiction" (quoting Lea Brilmayer et al., *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 735 (1988) (alteration in original)); *id.* at 139 (applying the identical test to both a corporation and a limited liability company). In addition, a court has general jurisdiction over the defendant if the company's contacts with the forum state "are so 'continuous and systematic' as to render [it] essentially at home in the forum

4

State." *M & F Worldwide*, 512 S.W.3d at 885 (quoting *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011) (alteration in original)).

## III. STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law, which we review de novo. *Kelly*, 301 S.W.3d at 657. If the trial court must resolve a factual dispute to decide the jurisdictional issue but does not issue findings, then all facts necessary to support the judgment and supported by the evidence are implied. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). If conflicting evidence raises a fact issue, we must uphold the trial court's resolution of it. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 36 n.4 (Tex. 2016) (citing *Retamco*, 278 S.W.3d at 337).

## IV. ASCENTIUM'S ISSUES AND ALLEGATIONS

Acentium presents the following four issues for review:

1. Is C323 subject to personal jurisdiction where its principal place of business is located?

2. In the context of general personal jurisdiction, is a company's "nerve center" its principal place of business?

3. Is the Texas office of C323's CEO John Turnage the company's principal place of business?

4. Did the trial court err in sustaining C323's special appearance and dismissing the claims against it for lack of personal jurisdiction?

Ascentium's first two issues are undisputed; both sides agree—and the law holds—that a company is subject to general jurisdiction in the state of its principal place of business. *See Daimler AG*, 571 U.S. at 137. A company's principal place

of business, often referred to as a company's "nerve center," is the place where the company's officers "direct, control, and coordinate" the company's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The company's nerve center normally is its headquarters, unless that is not the actual center of direction, control and coordination. *Hertz*, 559 U.S. at 93. The parties dispute whether the company's "nerve center" is in Texas or Florida.

As a basis for general jurisdiction, Ascentium alleged only that "C323's principal address is in Texas" and "two of C323's three managers list their addresses in Texas." Attached to and incorporated in Ascentium's pleadings were print-outs of three pages from the Florida Department of State's Division of Corporations. The first page provides detail about C323. The company is identified as a Florida limited liability company, with a "principal address" and "mailing address" at the same location in Carrollton, Texas.[3] The same address is stated for company managers John Turnage and Steve Pollak. A third manager, Charles Riser, resides in Maryland, and the company's registered agent is in Florida. The second and third pages are the company's 2016 and 2017 annual reports. In both reports, the names and addresses of the three managers and the registered agent are unchanged, as is the company's mailing address. Instead of identifying the Texas address as the company's "principal address," the annual reports identify it as C323's "current principal place of business." Both reports are signed by Turnage as "CEO."

Construing the pleading liberally in favor of the plaintiff, as we must,[4] we understand Ascentium to mean that C323's principal place of business is in Texas because documents filed with the Florida Department of State identify Carrollton,

---

[3] Initial capitalization has been removed from each quote from these documents.

[4] *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Texas, as C323's "principal address" or principal place of business and as the address for managers Turnage and Pollak.

C323 had the burden to negate these bases for jurisdiction, and could do so on factual or legal grounds. *See Kelly*, 301 S.W.3d at 659. Factually, it could attempt to disprove the allegations, and legally, it could attempt to show that, even if true, the allegations are insufficient to establish jurisdiction. *See id.* C323 challenged the allegations on both grounds.

## V. THE JURISDICTIONAL EVIDENCE

C323 does not dispute that Turnage has a Texas address but does dispute that Texas is Pollak's address and C323's principal place of business. In support of this position, Gonzalez attested that C323 is "incorporated" under Florida law; that its "sole business" is the operation of a cosmetology school in Miami, Florida; and that it has no other campuses or business offices. Gonzalez further states that all of C323's employees work from the school in Miami; that the company neither owns nor stores any property in Texas; that it has no employees in Texas; and that it has never advertised or solicited business in Texas. He attested that the Texas address is not C323's "principal address" but instead is "merely an address of one of C323's shareholders," adding that Pollak lives in North Carolina, not Texas. According to Gonzalez, "C323's *only* office is in Miami, Florida, where it operates its only business: a cosmetology school."

In response, Ascentium produced C323's Articles of Organization, which state that C323's "principal office address" and "mailing address" is in Carrollton, Texas, at the same address listed for Turnage. The other members of the company are Riser, whose address is in Maryland, and Pollak, whose address is in North Carolina, as Gonzalez stated. The Articles of Organization are signed by Turnage as "Manager," the same title given to Riser and Pollak. Ascentium also produced an

7

affidavit of service showing that C323 had been served by serving Turnage in Texas; however, Turnage also is the president of co-defendant Cosmetology Career Center, L.L.C., a Texas limited liability company in Plano, Texas. Turnage was served at Cosmetology Career Center's office, not at the C323's alleged principal place of business in Carrollton, Texas.

Ascentium also relied on excerpts from Gonzalez's deposition. Gonzalez testified that as campus manager, he was responsible for the "general operations of the day-to-day business of the school." He stated that co-defendant Hi-Tech is no longer operating, but he had been a shareholder and Hi-Tech's president. He also related that he and his son, who also resides in Florida, negotiated with Turnage for C323's purchase of Hi-Tech's assets, and that the negotiations took place in Florida. All recruitment of students takes place in Dade County, Florida, and all employees are hired from the Miami area. No employees ever travel to Texas. Gonzalez stated that C323 has no leases or loans from Texas companies, but the school's rent is paid from a checking account at a Texas bank. He admitted that Turnage, Riser, and Pollak all were his direct superiors and he reported to all three of them, but he stated that he does not know "the ranking of the partners" in the company. Gonzalez stated that he reported anything concerning compliance or finances to Riser in Maryland, and anything concerning education to Turnage in Texas. Gonzalez stated that he does not know how often Turnage, Pollak, or Riser visited the school, but that when they do come to town, "they don't like really perform any type of businesses like— it's more like a social visit when they come down to Miami."

In its reply, C323 also relied on excerpts from Gonzalez's deposition. Gonzalez stated that after he was hired, he spoke with Turnage only about once a month. He attested that his wages from C323 were paid from a Florida bank account and that the company's accountants are in Rhode Island. He explained that although

he reported matters concerning education to Turnage, Turnage was not "in charge" of education, but only made suggestions. According to Gonzalez, educational decisions were made by Gonzalez and "the education leader in the school." He testified that C323 "had to be in compliance with the Department of Education" and that Turnage had spoken to the Department on C323's behalf, but so too did Riser and Pollak.

On this record, there is some evidence to support the trial court's implied finding that C323's nerve center is not in Texas. The company purchased Florida assets and negotiated the purchase in Florida. Its only business is the operation of Florida school, and all educational decisions are made in Florida. All of the company's employees are in Florida, and although no employees travel to Texas, the company's managers travel to Florida. The company's manager-members make some decisions in Texas, but they also make decisions in North Carolina and Maryland; thus, the trial court reasonably could find that the company's "principal place of business" is not in any one of those three states.

## VI. ASCENTIUM'S ARGUMENTS

According to Ascentium, the company's public filings identifying Texas as its principal address and principal place of business should be dispositive, or nearly so. But, as C323 has pointed out, the United States Supreme Court has rejected the suggestion that "the mere filing of a form" is itself sufficient to establish a location as the company's nerve center. *Hertz*, 559 U.S. at 97. A company's principal place of business in not the place that is denominated its "headquarters," but the place that is "the *actual* center of direction, control, and coordination." *Id.* at 93 (emphasis added). A form's identification of a company's principal place of business is some evidence that it is, but to treat the form as dispositive "would readily permit jurisdictional manipulation." *Id.* at 97. We accordingly agree with C323 that the

9

documents on which Ascentium relies are insufficient to establish that Texas is the company's principal place of business.

Ascentium additionally argues that the "undisputed facts" dictate the conclusion that C323's principal place of business is in Texas. But, Ascentium relies on only some of the facts and on the undue weight it erroneously attaches to C323's public filings. For example, Ascentium points out that C323 pays its rent from a Texas bank account, but Ascentium ignores that C323 pays its employees from a Florida bank account. Ascentium asserts that Gonzalez answers to Turnage, but when asked if any of C323's manager-members was his direct superior, Gonzalez answered, "Definitely, I reported to all three of them." Ascentium says that Turnage communicates directly with the Department of Education and has authority to bind the company, but Gonzalez testified that the same is true of Riser and Pollak. Ascentium also points out that Turnage is listed as the company's CEO; his office is listed as the company's principal place of business; and Turnage's office was the company's only place of business before it purchased Hi-Tech's assets. But, as discussed, the public filings are not dispositive, and according to Gonzalez, all three managers direct the company. That Texas was once the company's only place of business is entitled to little weight because the company's principal place of business is determined as of the time suit is filed. *See, e.g.*, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952).

Ascentium also advances several arguments based on C323's contacts with Turnage, who lives and works in Texas, but minimum-contacts analysis requires a court to analyze a defendant's contacts with Texas, not its contacts with Texas residents. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014). For example, Ascentium states that Turnage formed the company; however, Turnage chose to form a Florida company. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808

(Tex. 2002) (company may "structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states such as Texas" (quoting *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375–76 (5th Cir. 1987))). Ascentium notes that Turnage negotiated and executed C323's purchase of assets, but it is undisputed that Turnage negotiated in Florida for the purchase of Florida assets, which then remained in Florida. Ascentium also cites Gonzalez's testimony that Turnage interviewed Gonzalez, but Gonzalez testified that Turnage interviewed him in Florida, where all of C323's potential employees are interviewed.

Although the evidence of C323's principal place of business is conflicting, the evidence suffices to support the trial court's implied finding that the company's principal place of business is not in Texas. We overrule Ascentium's third and fourth issues.

## VII. CONCLUSION

A limited liability company is subject to general jurisdiction in the state in which its "nerve center" is located. Because some evidence reasonably supports the trial court's implied finding that C323's principal place of business is not in Texas, the trial court did not abuse its discretion in granting the company's special appearance and dismissing the claims against the company. *See TV Azteca*, 490 S.W.3d at 36 n.4. We accordingly affirm the trial court's judgment.

/s/     Tracy Christopher
        Justice

Panel consists of Chief Justice Frost and Justices Christopher and Jamison.

11