**Affirmed and Opinion Filed May 3, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-20-00841-CV

## CAREINGTON INTERNATIONAL CORPORATION, Appellant
## V.
## FIRST CALL TELEMEDICINE, LLC, Appellee

### On Appeal from the 471st Judicial District Court
### Collin County, Texas
### Trial Court Cause No. 471-02335-2019

## MEMORANDUM OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Garcia

This is an interlocutory appeal from an order granting the special appearance

filed by one of the three defendants in the case.

Appellant Careington International Corporation, a Texas company, sued

appellee First Call Telemedicine, LLC, a Georgia company, for tortiously interfering

with Careington's contract with another Texas company. The trial court sustained

First Call's special appearance challenging personal jurisdiction. On appeal,

Careington argues that the trial court erred (1) by granting First Call's special

appearance or, alternatively, (2) by denying Careington's motion to continue the

special-appearance hearing and to compel discovery. We overrule Careington's issues and affirm.

## I. Background

### A. Factual Allegations

We draw the following factual allegations from Careington's live petition, in which it sues three defendants: First Call, My TeleMedicine, Inc. (MTM), and Aliera Companies Inc.

Careington is a Texas corporation that offers its clients and its clients' members access to health-care products and services including telemedicine services.

In January 2016, Careington entered a contract with MTM, a company with its principal place of business in McKinney, Texas. Under this contract, Careington would pay MTM to give Careington access to telemedicine services.

Also in early 2016, Careington brokered an introduction between MTM and Aliera, a health-care marketer and administrator based in Atlanta, Georgia. At that time, Aliera "contemplated providing its members access to telemedicine through its private label brand, FirstCall." In April 2016, Aliera and MTM entered an agreement under which MTM would give Aliera access to telemedicine services.

In May 2016, Careington and MTM amended their agreement to provide that MTM would pay Careington a monthly fee for each Aliera member that had access

to MTM's services. MTM promised to pay Careington this referral fee every month. However, Careington has yet to receive any referral fees from MTM.

In June 2017, First Call was organized as a Georgia limited liability company. Its organizational documents show that First Call is affiliated with and controlled by Aliera and its principals. Aliera's membership and registration materials show that Aliera gives its members access to telemedicine through First Call.

Careington sought to review MTM's records to ensure MTM's performance under their agreement. MTM failed to provide all requested documents. Careington believes that MTM intentionally misled Careington about Aliera members' access to MTM's telemedicine services to avoid paying Careington its referral fee.

## B.    Procedural History

Careington filed this lawsuit in April 2019. Although Careington's original and first amended petitions do not appear in the clerk's record, the docket sheet suggests that Careington sued only MTM in those pleadings.

In May 2020, Careington filed a second amended petition joining Aliera and First Call as defendants. This pleading asserts breach-of-contract and fraud claims against MTM and tortious-interference claims against Aliera and First Call.

First Call filed a special appearance and answer subject thereto. Careington filed a combined response and, in the alternative, motion for continuance and to compel discovery responses. After a hearing, the trial judge signed an order sustaining First Call's special appearance, denying Careington's request for a

continuance to conduct discovery, and dismissing Careington's claim against First Call with prejudice. Several days later, she signed a reformed order changing the dismissal to one without prejudice.

Careington filed a motion for reconsideration that the trial judge heard and denied.

Careington then appealed the reformed order sustaining First Call's special appearance. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(7); *see also Careington Int'l Corp. v. First Call Telemedicine, LLC*, No. 05-20-00841-CV, 2020 WL 6866566 (Tex. App.—Dallas Nov. 23, 2020, order) (mem. op.) (accepting Careington's untimely notice of appeal). Our jurisdiction extends only to that order. *See Pahl v. Don Swaim, P.C.*, No. 05-12-01438-CV, 2013 WL 3929238, at *2 (Tex. App.—Dallas July 26, 2013, no pet.) (mem. op.) ("An order denying a motion for reconsideration is not an immediately appealable order.").

## II.  Issues Presented

Careington asserts three issues. Issue one asserts that the trial judge erred by sustaining First Call's special appearance and by denying Careington's motion for a continuance and to compel jurisdictional discovery. Issue two asserts that the trial judge erred by sustaining First Call's special appearance. Issue three asserts in the alternative that the trial judge erred by denying Careington's motion to continue and compel.

Careington does not present any separate argument under its first issue, so we proceed directly to issue two.

### III.    Special Appearance

Careington's first and second issues assert that the trial court erred by not overruling First Call's special appearance on the merits.  We disagree for the following reasons.

### A.    Standard of Review and Burden of Proof

We review a ruling on a special appearance de novo.  *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002).  If the trial judge does not issue findings of fact and conclusions of law, the fact findings necessary to support a judgment and supported by the evidence are implied.  *Id*. at 795.  Implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency.  *Id*.

The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute.  *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010).  If the plaintiff pleads sufficient jurisdictional facts, the defendant bears the burden to negate all alleged bases of personal jurisdiction.  *Id*.  If the plaintiff fails to plead facts bringing the defendant within the long-arm statute, such as that the defendant committed tortious acts in Texas, the defendant carries its burden by proving it is not a Texas resident.

*See id.* at 658–59; *see also* CIV. PRAC. & REM. CODE § 17.042(2) (committing a tort in whole or in part in Texas constitutes doing business in Texas).

**B.      Analysis**

### 1.      Did Careington plead enough jurisdictional facts to subject First Call to personal jurisdiction in Texas?

Careington argues that it pleaded enough jurisdictional facts to subject First Call to personal jurisdiction under the Texas long-arm statute. We disagree.

*Kelly* instructs that to bring a defendant within reach of the Texas long-arm statute for a tort claim, the plaintiff needs to plead that the defendant committed tortious acts in Texas. 301 S.W.3d at 658–59; *see also* CIV. PRAC. & REM. CODE § 17.042(2). We find no such allegations in Careington's live petition. Instead we find the following:

- Careington alleges that First Call (1) was aware of the Careington–MTM contract and its amendment relating to the Aliera referral fee and (2) interfered with the contract by "directing Aliera's members to FirstCall for telemedicine services as a means to circumvent" it. In its brief, Careington further asserts that First Call interfered by selling "MTM's telemedicine services to Aliera members under the First Call name *including in Texas*." (Emphasis added.) But Careington's live pleading does not include that Texas allegation or otherwise allege that First Call committed any acts of interference in Texas.

- Careington alleges that in April 2016 Aliera made a contract with MTM whereby MTM agreed to provide Aliera with access to telemedicine services. But this contract isn't a Texas contact by First Call, which Careington alleges is a distinct legal entity that did not even exist in April 2016.

–6–

- Careington alleges that First Call is affiliated with and controlled by Aliera's principals. But affiliation and control are not acts by First Call in Texas.

Careington also relies on its venue allegation that "a substantial part of the events giving rise to Careington's claims herein occurred in Collin County[, Texas.]" But this doesn't expressly allege that First Call committed any conduct in Texas, nor does it carry such an implication. Careington's venue allegation could be true even if First Call had no contact with Texas, since its co-defendant—which allegedly breached the contract that First Call allegedly interfered with—allegedly has its principal place of business in McKinney, Texas.

Careington argues that *Ji-Haw Industrial Co., Ltd. v. Broquet*, No. 04-07-00622-CV, 2008 WL 441822 (Tex. App.—San Antonio Feb. 20, 2008, no pet.) (mem. op.), shows that Careington's venue allegation is sufficient to satisfy the long-arm statute. Careington's use of *Ji-Haw* is inapposite. In *Ji-Haw*, the case involved a products-liability claim surrounding the design, manufacture and marketing of an XBOX gaming system. As such, it is distinguishable from this case, which involves alleged tortious interference with a contract. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 871 (Tex. 2010) (holding that a manufacturer is subject to specific personal jurisdiction in Texas when it intentionally targets Texas as the marketplace for its products, and that using a distributor-intermediary for that purpose provides no haven from the jurisdiction of a Texas court).

A more appropriate analysis of the claims before us comes from the more recent *Kelly*. Careington asserts that tortious interference with a Texas contract can "state a tort claim occurring in Texas." But the question under *Kelly* is whether Careington has alleged that First Call committed any tortious act in Texas. *See id*. It has not. Thus, this case is distinguishable from other tortious-interference cases that come to a different result. *See, e.g.*, *Enright v. Asclepius Panacea, LLC*, No. 03-15-00348-CV, 2016 WL 1048881, at *8 (Tex. App.—Austin Mar. 8, 2016, no pet.) (mem. op.) (defendant's alleged acts of tortious interference "occurred, in part, in Texas"); *MasterGuard, L.P. v. Eco Techs. Int'l LLC*, 441 S.W.3d 367, 372 (Tex. App.—Dallas 2013, no pet.) (plaintiff alleged that nonresident defendant tortiously recruited plaintiff's directors and dealers located in Texas).

Careington also asserts that a plaintiff need not allege that a specific tort was committed in Texas if the defendant purposefully availed itself of the privilege of doing business in Texas related to that tortious conduct. But Careington's premise, even if correct, does not apply here because Careington's live pleading does not allege that First Call did any business in Texas.

Careington's reply brief points out that Careington's live petition pleaded that "the exercise of this Court's jurisdiction over Defendants is proper." But this is a legal conclusion, not a jurisdictional fact.

We conclude that Careington failed to plead any jurisdictional facts against First Call; therefore First Call could meet its special-appearance burden by proving

–8–

it is not a Texas resident.  *See Kelly*, 301 S.W.3d at 660 ("Because GIC failed to plead jurisdictional facts, the Officers could . . . meet their burden to negate all bases of jurisdiction by proving that they do not live in Texas.").

### 2.    Did First Call prove it is not a Texas resident?

Careington argues that First Call's special appearance fails because it was not supported with an adequate verification.  For the following reasons, we reject that argument and conclude that First Call proved its nonresident status.

#### a.    First Call's supplemental verification was timely and sufficient.

A special appearance must be made by sworn motion.  TEX. R. CIV. P. 120a(1). Thus, it must be supported with a verification, meaning a formal declaration before an authorized officer, such as a notary public, by which someone swears to the truth of the statements made in a document.  *See Brady v. Kane*, No. 05-18-01105-CV, 2020 WL 2029245, at *4 (Tex. App.—Dallas Apr. 28, 2020, no pet.) (mem. op.) (discussing verification requirement).

Careington argues that (1) First Call's original verification was conclusory and fails to show how the witness obtained personal knowledge of the verified facts and (2) First Call's supplemental verification filed the day of the special-appearance hearing was untimely and still failed to show personal knowledge.

We conclude that First Call's supplemental verification was both timely and adequate.  Although special-appearance affidavits must be filed seven days before the hearing, TEX. R. CIV. P. 120a(3), a defective verification may be amended at any

–9–

time before the defendant makes a general appearance—even after the special appearance is ruled on, *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998). First Call's pre-ruling supplemental verification was timely.

And the witness sufficiently showed personal knowledge of the facts stated in the special appearance. The witness stated that she was First Call's agent and chief executive officer and that the factual allegations in First Call's special appearance were true and correct. Her status as chief executive officer suffices to show personal knowledge of the basic facts about First Call's business stated in the special appearance: (1) First Call conducts its business in the state of Georgia, (2) First Call is a Georgia resident and does not maintain offices in Texas, and (3) First Call's primary place of business is in Georgia. *See Hydroscience Techs., Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 791 (Tex. App.—Dallas 2013, pet. denied) ("An affiant's position or job responsibilities can qualify him to have personal knowledge of facts and establish how he learned of the facts."). The case Careington relies on in opposition is distinguishable. *See 360-Irvine, LLC v. Tin Star Dev., LLC*, No. 05-14-00412-CV, 2015 WL 3958509, at *3 (Tex. App.—Dallas June 30, 2015, no pet.) (mem. op.) (affiant failed to show personal knowledge of entities' Texas contacts where he was a "member" of the entities and said that the stated facts about the entities were to the best of his knowledge).

We conclude that First Call sufficiently verified its special appearance.

### b. First Call proved it is not a Texas resident.

Aside from its argument attacking First Call's verification, Careington does not appear to argue that First Call failed to prove that it is not a Texas resident. But even assuming Careington makes such an argument, we conclude that First Call carried its burden to prove that it does not "live" in Texas within the meaning of *Kelly*, 301 S.W.3d at 658–59.

For personal-jurisdiction purposes, a limited liability company is a resident of the state under whose laws it is organized and of the state where it has its principal place of business. *See Ascentium Capital LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 828 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (limited liability companies are treated like corporations for general-jurisdiction purposes); *see also BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (corporation is "at home" in both its state of incorporation and the state of its principal place of business).

First Call's special appearance relied on the averment in Careington's live petition that First Call is a Georgia limited liability company with its principal place of business in Atlanta, Georgia. This averment is a judicial admission that First Call is a Georgia resident, and thus not a Texas resident, for personal-jurisdiction purposes. *See Houston First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions."); *id*. at 769 (facts admitted in a live pleading

–11–

are binding on the pleader). Thus, Careington's petition sufficed to prove that First Call is not a Texas resident under *Kelly*.

## C.      Conclusion

The trial judge did not err in its ruling on the merits of First Call's special appearance. Accordingly, we overrule Careington's second issue and the relevant part of its first issue.

## IV.    Continuance for Jurisdictional Discovery

Careington's first and third issues argue that the trial court erred by denying Careington's motion for continuance.

Careington also appears to argue that the trial court erred by not compelling First Call to respond to Careington's discovery requests. But the trial judge denied Careington's motion for continuance and granted First Call's special appearance without ruling on Careington's motion to compel. Thus, we do not address any argument Careington may be asserting that the trial court should have compelled responses to particular discovery requests. *See* TEX. R. APP. P. 33.1(a)(2) (error not preserved unless trial court ruled or trial court refused to rule and complaining party objected to the refusal). We address Careington's arguments only as they relate to the denial of its continuance motion.

## A.      Applicable Law

A trial judge may continue a special-appearance hearing if a party opposing the special appearance files an affidavit showing that the party cannot, for reasons

stated, present its own countering affidavits showing facts essential to justify opposing the special appearance. TEX. R. CIV. P. 120a(3). In ruling on a motion for continuance, the trial judge should consider factors such as how long the case has been on file, the materiality and purpose of the discovery sought, and whether the moving party exercised due diligence to obtain the discovery sought. *See Favour Leasing, LLC v. Mulligan*, No. 05-13-01000-CV, 2014 WL 4090130, at *10 (Tex. App.—Dallas Aug. 19, 2014, no pet.) (mem. op.) (listing factors).

We review the trial court's denial of a Rule 120a motion for continuance for abuse of discretion. *Id*. A trial court abuses its discretion when it acts arbitrarily or unreasonably. *Id*. Under this standard, we may not simply substitute our judgment for that of the trial judge. *Sci. Image Ctr. Mgmt., Inc. v. Brewer*, 282 S.W.3d 233, 236 (Tex. App.—Dallas 2009, pet. denied).

## B. Did the trial judge abuse her discretion?

We consider the factors outlined in *Favour Leasing* and conclude that the trial judge did not abuse her discretion.

### 1. The Age of the Case

First, we consider how long the case had been on file. The following dates are relevant:

| | |
|---|---|
| Apr. 30, 2019 | Careington sued MTM, which answered in May 2019. |
| May 12, 2020 | Careington joined First Call as a defendant. |
| Aug. 18, 2020 | Special-appearance hearing. |

–13–

Just over three months passed between Careington's joining First Call as a defendant and the special appearance hearing. Although this was not a particularly long time, it was long enough for Careington to serve some discovery.

At the time of the special appearance hearing, this case had already been pending against MTM for over a year and three months. During that time, Careington could have sought discovery from MTM to ascertain why MTM was (in Careington's view) breaching its contract. This could have revealed First Call's involvement, if any, in that breach and any related Texas contacts First Call might have had. *Cf. Favour Leasing*, 2014 WL 4090130, at *11 (affirming denial of continuance and noting that case had been on file six months before plaintiff served discovery requests).

We conclude that the trial judge could have reasonably determined that this factor did not weigh in Careington's favor.

### 2. The Purpose and Materiality of the Discovery

Next, we consider the purpose and materiality of the discovery Careington proposed to pursue during the requested continuance. Careington's discovery requests were proper and material only if they were tailored to reveal facts showing that First Call purposefully established minimum contacts with Texas; discovery relating solely to the merits would not be proper or material. *See In re Perl*, No. 05-20-00170-CV, 2020 WL 2847533, at *3 (Tex. App.—Dallas June 2, 2020, orig.

–14–

proceeding) (mem. op.) (discussing parameters of proper personal-jurisdiction discovery).

We begin by noting that Careington disputes the trial judge's statement in her reformed order that "Plaintiff's requested discovery relates to general jurisdiction, a basis for personal jurisdiction not found in Plaintiff's pleadings or arguments to the Court." However, erroneous conclusions of law do not require reversal if the trial court rendered the proper judgment. *Bos v. Smith*, 556 S.W.3d 293, 299 (Tex. 2018). In any event, many of Careington's requests did relate at least in part to general jurisdiction, which Careington did not plead. Thus, the trial judge's conclusion was at least partially correct.

On appeal, Careington identifies multiple topics that it sought to conduct discovery about. Several topics involve Texas contacts but are untethered to Careington's tortious-interference claims against First Call. Thus, they must relate to general jurisdiction, which Careington did not plead:

- First Call's customers or potential customers in Texas, including those with representatives in Texas;

- First Call's contracts with persons in Texas other than MTM;

- First Call's work or services provided to any person based in Texas other than MTM;

- Trips to Texas by First Call's employees or representatives (not limited to trips germane to Careington's claims); and

- First Call's revenues from any Texas sources, directly or indirectly.

And some other topics appear not to relate to Texas contacts at all:

–15–

- The identity of everyone who worked on First Call's special appearance;

- The role and responsibilities of the person who verified First Call's special appearance; and

- The trademarks registered or owned, directly or indirectly, by First Call.

Thus, the trial judge could have reasonably concluded that Careington wanted a continuance to pursue discovery into matters that were improper or unsupported by Careington's pleading. *See In re Deutsche Bank Sec. Inc.*, No. 03-14-00744-CV, 2015 WL 4079280, at \*9 (Tex. App.—Austin July 3, 2015, orig. proceeding) (mem. op.) (granting mandamus relief to protect foreign defendant from extensive discovery where plaintiff had made no allegation of sufficient minimum contacts); *Favour Leasing*, 2014 WL 4090130, at \*11 (affirming denial of continuance and noting that many of plaintiff's discovery requests were unrelated to special-appearance issues); *see also In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998) (per curiam) (orig. proceeding) (discovery may not be used as a fishing expedition).

The other topics Careington argues it should have been allowed to conduct discovery about involve (1) First Call's contacts with MTM, (2) First Call's corporate structure, and (3) the contentions First Call made in its special appearance. Although First Call's contacts with MTM could be relevant to specific jurisdiction over First Call, Careington's pleading does not allege that any of those contacts were purposeful Texas contacts by First Call. Nor does Careington's pleading allege

–16–

jurisdictional alter ego so as to justify inquiries about First Call's corporate structure. And because Careington alleged no jurisdictional bases against First Call, First Call made virtually no contentions in its special appearance. So the trial judge could reasonably have concluded that these discovery requests were, for the most part, unsupported by the pleadings or not calculated to lead to useful information. *See In re Deutsche Bank Sec. Inc.*, 2015 WL 4079280, at *9.

In sum, the trial court could have reasonably concluded that the discovery Careington wanted to conduct during the proposed continuance was largely improper or immaterial and that this factor did not support Careington's request for a continuance.

### 3.    Careington's Diligence

Finally, Careington argues that it pursued discovery diligently during the time available. Specifically, it served on First Call a deposition notice duces tecum sixteen days after First Call filed its special appearance and two days after First Call set its special appearance for hearing. First Call moved to quash the deposition notice three days after service. According to Careington's verified special-appearance response, Careington attempted to confer with First Call about the discovery on August 12, 2020, which was twenty-nine days after First Call filed its motion to quash and twelve days before the special-appearance hearing. First Call ignored that attempt.

Although the foregoing facts show that Careington exercised some diligence in pursuing jurisdictional discovery, the trial judge could have reasonably concluded that due diligence required more. Careington could have sought immediate court intervention regarding First Call's motion to quash or sought an oral deposition without production of documents. *Cf. Favour Leasing*, 2014 WL 4090130, at \*11 (affirming denial of continuance and noting that plaintiff did not file a motion to compel).

Careington also complains that First Call concealed relevant discovery. It asserts, for example, that First Call conceded that it had Texas customers but refused to provide any information about them. We disagree that First Call made such a concession; its special appearance, which Careington cites for the concession, actually says, "Even if some of Defendant's customers are Texas residents, the transactions and services take place, and are provided in, the state of Georgia." And, as discussed above, Careington's discovery requests about First Call's Texas customers were not limited to customers First Call referred to MTM, which were the only customers potentially relevant to specific jurisdiction. Thus, Careington's discovery requests were overly broad.

Careington also argues that First Call did not disclose a contract it has with MTM. The contract is not part of our appellate record, but Careington has filed a motion asking us to take judicial notice of it. Because the document does not meet the criteria for judicial notice, we deny Careington's motion by separate order. *See*

TEX. R. EVID. 201(b) (judicial notice is proper for facts generally known within the trial court's territorial jurisdiction and facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned). The alleged contract was not before the trial court as part of Careington's request for a continuance, so Careington cannot use it to show an abuse of discretion.

We conclude that Careington showed some diligence in pursuing discovery and that this factor weighs somewhat in Careington's favor.

### 4. Conclusion

Based on our analysis of the relevant factors, we conclude that Careington has not shown that the trial judge's denial of Careington's motion for continuance was arbitrary or unreasonable. Accordingly, we overrule Careington's third issue and the relevant part of its first issue.

## V. Disposition

We affirm the trial court's Reformed Order on Defendant First Call's Special Appearance.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200841F.P05

–19–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CAREINGTON INTERNATIONAL
CORPORATION, Appellant

No. 05-20-00841-CV     V.

FIRST CALL TELEMEDICINE,
LLC, Appellee

On Appeal from the 471st Judicial
District Court, Collin County, Texas
Trial Court Cause No. 471-02335-
2019.
Opinion delivered by Justice Garcia.
Justices Myers and Partida-Kipness
participating.

In accordance with this Court's opinion of this date, the trial court's August 31, 2020 Reformed Order on Defendant First Call's Special Appearance is **AFFIRMED**.

It is **ORDERED** that appellee First Call Telemedicine, LLC recover its costs of this appeal from appellant Careington International Corporation.

Judgment entered May 3, 2021.