**REVERSE, RENDER, AND REMAND and Opinion Filed July 30, 2021**



In The

# Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-20-00558-CV

**FOREVER LIVING PRODUCTS INTERNATIONAL, LLC, A NEVADA LIMITED LIABILITY COMPANY, AND ALOE VERA OF AMERICA, INC., A TEXAS CORPORATION, Appellants**
**V.**
**AV EUROPE GMBH, A GERMAN LIMITED LIABILITY COMPANY, Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-00270**

## OPINION

Before Justices Myers, Partida-Kipness, and Garcia
Opinion by Justice Garcia

Appellants sued appellee AV Europe GmbH and two other defendants. The trial court sustained AV Europe's special appearance and dismissed the claims against it for lack of personal jurisdiction. Appellants appeal this interlocutory ruling. We reverse, concluding that AV Europe failed to show it is not subject to general jurisdiction in Texas.

## I. Background

### A. Factual Allegations

Unless otherwise noted, we draw these allegations from appellants' original petition, which was their live pleading when the trial court granted AV Europe's special appearance.

Appellant Forever Living Products International, LLC is the management company for a marketing business (referred to as a whole as "FLP") that sells aloe vera products in many countries around the world. Appellant Aloe Vera of America, Inc. (AVA) is FLP's aloe refining and production entity.

Christopher Hardy was an AVA vice president and general manager. He was terminated in 2013. After that, Hardy and other former FLP employees created an aloe vera business called AloeVeritas. HW&B Enterprises, LLC is the holding company and manufacturer for other AloeVeritas entities including AV Europe. Hardy testified in deposition that AV Europe has always been wholly owned by HW&B and that he is the manager of HW&B.

Appellants allege that Hardy attempted to poach one of FLP's foreign distribution entities, FLP Japan, for AloeVeritas. He did so by disclosing FLP's confidential information and "by sharing false/misleading 'insider' information" with FLP Japan. This caused a dispute between FLP and one of FLP Japan's owners that in turn caused substantial damage to FLP.

FLP then sued Hardy in an arbitration proceeding pursuant to his FLP employment agreement. FLP won a final arbitration award against Hardy for roughly $920,000. The award was confirmed as a judgment in Arizona, and that judgment has been domesticated in Texas.

## B.  Procedural History

Appellants filed this lawsuit against HW&B, Aloe Veritas Americas, LLC, and AV Europe, alleging that they (through Hardy) tortiously interfered with appellants' relationship with FLP Japan. Appellants seek to hold defendants liable for the same damages that have already been assessed against Hardy. They also seek exemplary damages and injunctive relief.

AV Europe filed a special appearance challenging personal jurisdiction, asserting that it is a German entity with no office or facility outside of Germany. Appellants assert, and AV Europe does not dispute, that the abbreviation "GmbH" signifies that AV Europe is the German equivalent of a limited liability company. We accept that assertion for purposes of this appeal. *See* TEX. R. APP. P. 38.1(g) ("In a civil case, the court will accept as true the facts stated [in appellant's brief] unless another party contradicts them."); *see also Moore ex rel. Moore v. Elektro-Mobil Technik GmbH*, 874 S.W.2d 324, 326 n.1 (Tex. App.—El Paso 1994, writ denied) ("In Germany, GmbH designates a closely held, limited liability company.").

Appellants filed a response to AV Europe's special appearance and attached evidence thereto. AV Europe filed an amended special appearance and additional

supporting evidence. AV Europe contended both that it lacked minimum contacts with Texas and that forcing it to litigate in Texas would offend traditional notions of fair play and substantial justice.

After a non-evidentiary hearing, the trial judge sustained AV Europe's special appearance and dismissed appellants' claims against it.

Appellants timely filed this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

## II.    Issues Presented

Appellants raise two issues on appeal: (1) the trial judge erred by sustaining AV Europe's special appearance and (2) the trial judge erred by denying appellants' request for leave to amend their petition to add an allegation of jurisdictional alter ego.

## III.    Standard of Review and Burden of Proof

We review a ruling on a special appearance de novo. *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). If the trial judge does not issue findings of fact and conclusions of law, the fact findings necessary to support the ruling and supported by the evidence are implied. *Id*. Implied findings are not conclusive and may be challenged on appeal for legal and factual sufficiency. *Lensing v. Card*, 417 S.W.3d 152, 155 (Tex. App.—Dallas 2013, no pet.).

The plaintiff bears the initial burden of pleading sufficient facts to bring a nonresident defendant within the reach of the Texas long-arm statute. *Kelly*, 301

S.W.3d at 658. If the plaintiff pleads sufficient jurisdictional facts, the defendant bears the burden to negate all alleged bases of personal jurisdiction. *Id*. Alternatively, the defendant can prevail by showing that even if the plaintiff's allegations are true, the evidence is legally insufficient to establish that personal jurisdiction over the defendant is proper. *See id*. at 659.

Although the trial judge acts as the factfinder and must resolve any factual disputes in the special-appearance evidence, the judge must accept as true any clear, direct, and positive evidence presented in an undisputed affidavit. *N. Frac Proppants, II, LLC v. 2011 NF Holdings, LLC*, No. 05-16-00319-CV, 2017 WL 3275896, at *6 (Tex. App.—Dallas July 27, 2017, no pet.) (mem. op.); *see also Smith v. Patrick W.Y. Tam Trust*, 296 S.W.3d 545, 547 (Tex. 2009) (discussing circumstances under which evidence must be taken as true as a matter of law).

## IV. Analysis

### A. The Law of Personal Jurisdiction

Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute authorizes it and (2) the exercise of jurisdiction is consistent with due-process guarantees. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872 (Tex. 2010). Texas's long-arm statute reaches as far as due process allows, *id*., so we focus solely on the due-process analysis.

The Fourteenth Amendment's Due Process Clause limits a state court's authority to proceed against a nonresident defendant. *See Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011). The exercise of personal jurisdiction over a nonresident defendant is constitutional only if (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Spir Star AG*, 310 S.W.3d at 872. *But see Daimler AG v. Bauman*, 571 U.S. 117, 139 n.20 (2014) (second element is superfluous in some personal-jurisdiction cases).

The stringency of the minimum-contacts test varies depending on whether the plaintiff's claims arise out of or relate to the defendant's forum contacts. *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024–25 (2021).

If the plaintiff's claims are unrelated to the defendant's forum contacts, the forum is said to be asserting general or all-purpose jurisdiction over the defendant. *Goodyear Dunlop*, 564 U.S. at 919. A court may assert general jurisdiction over a foreign corporation only if its affiliations with the state are so continuous and systematic as to render the corporation essentially at home in the forum state. *Id*. Limited liability companies like AV Europe are treated like corporations for general-jurisdiction purposes. *See Careington Int'l Corp. v. First Call Telemedicine, LLC*, No. 05-20-00841-CV, 2021 WL 1731753, at *5 (Tex. App.—Dallas May 3, 2021, no pet.) (mem. op.).

In *Daimler*, the Supreme Court said that there are two paradigmatic bases for general jurisdiction over a corporation: its state of incorporation and the state of its principal place of business. *Daimler AG*, 571 U.S. at 137. The *Daimler* Court did

not define the term "principal place of business," but only a few years before *Daimler* the Court held that the phrase "principal place of business" means the place where a corporation's officers direct, control, and coordinate the corporation's activities. *See Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010) (construing the federal diversity-jurisdiction statute). Courts often refer to this as the company's "nerve center," and in practice it should normally be the place of the company's headquarters—if that is the company's actual center of direction, control, and coordination. *Hertz Corp.*, 559 U.S. at 93. Although *Hertz* was not a personal-jurisdiction case, courts have applied its definition of "principal place of business" in personal-jurisdiction cases. *E.g.*, *Ascentium Capital LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *see also Flynn v. Hovensa, LLC*, No. 3:14-43, 2014 WL 3375238, at *2 (W.D. Pa. July 3, 2014); *Jovanovich v. Ind. Harbor Belt R.R. Co.*, No. 1-19-2550, 2020 WL 5843957, at *6–7 (Ill. App. Ct. Sept. 30, 2020). We agree with those courts and conclude that the *Hertz* nerve-center test applies in the general-jurisdiction context.

The minimum-contacts test is less stringent if the plaintiff's claims arise from or relate to the defendant's forum contacts. *See Ford Motor Co.*, 141 S. Ct. at 1024–25. This kind of personal jurisdiction is called specific or case-linked jurisdiction. *Id*. at 1024. Specific-jurisdiction minimum contacts are present if the defendant

purposefully availed itself of the privilege of conducting activities in the forum state. *Id*. at 1024–25.

**B.     The Pleaded Bases of Jurisdiction in This Case**

Appellants' live petition contains two jurisdictional allegations against AV Europe. It alleges that AV Europe "is a German limited liability company operating in Dallas County, Texas." It also alleges that "[v]enue is proper in Dallas County . . . because all or a substantial part of the events or omissions giving rise to the claim occurred in Dallas County and Defendants' principal offices in the State of Texas and [sic] are all located in Dallas County."

Given Texas's liberal notice-pleading standards, we conclude that appellants' petition sufficed to allege that AV Europe is subject to general jurisdiction in Texas. The petition asserts that each defendant's principal office in Texas is in Dallas County, which suggests that general jurisdiction is proper. Additionally, the allegation that AV Europe is "operating in Dallas County" is broad enough to encompass the premise that AV Europe's nerve center is in Texas. AV Europe's special appearance shows that AV Europe understood the petition to allege general jurisdiction because the special appearance averred that AV Europe did not have continuous or systematic contacts with Texas, was not a "resident business organization," and had never been such an organization.

Thus, AV Europe bore the burden to negate general jurisdiction in Texas. *See Kelly*, 301 S.W.3d at 658.

## C. The Implied Findings and the Evidence in This Case

As to general jurisdiction, the trial court implicitly found both that AV Europe was not organized in Texas and that its principal place of business was not in Texas when suit was filed. *See Daimler AG*, 571 U.S. at 137. Appellants attack the second implied finding.

The special-appearance evidence, which consists principally of Hardy's declaration and excerpts from Hardy's deposition, supports the following facts:

AV Europe was formed as a German company on or about July 21, 2016. AV Europe's parent company is and always has been HW&B, a Texas limited liability company with its principal place of business in Texas. Hardy is HW&B's manager. HW&B's only involvement with AV Europe was to sell and ship products to AV Europe for resale.

From July 2016 to the fall of 2017, AV Europe's managing director was Thomas Reichert,[1] who lived in Germany and was entirely responsible for AV Europe's operation. AV Europe's first headquarters was Reichert's home in Germany. Then it moved its headquarters to a converted airplane hangar in Germany. All of AV Europe's operations were conducted from those two locations. While AV Europe was operating, it had eight or nine employees, all of whom were located in Germany.

---

[1] In the appellate record, this person's name appears as both "Reichert" and "Reichart."

In fall 2017, Reichert was terminated for cause. Sean Higgins, who was a United Kingdom resident living in England, assumed the role of managing director for about a month.

On November 20, 2017, Hardy became AV Europe's managing director, and he remained managing director at the time of this litigation. Hardy moved to Texas in 2005 and has maintained a residence in Texas since then. He lived in New York for a time but resumed living in Texas full-time in July 2018. He testified in his deposition that he "was a resident of New York for a period of time," but then he answered, "No," when asked if he "ever bec[a]me a New York resident."

In approximately June 2018, AV Europe stopped conducting business. It later shipped all unsold products back to HW&B. It now has no employees. According to Hardy's declaration, AV Europe (1) never had a principal place of business in Texas, (2) never engaged in business in Texas other than buying products from HW&B for resale in Europe, (3) does not own any real estate in Texas, (4) maintains no bank accounts or other accounts with financial institutions in Texas, and (5) "has been winding down, but has not been formally dissolved."

Hardy testified in his deposition that HW&B employees searched through HW&B's records in Texas to find documents responsive to discovery requests sent to AV Europe. He also testified that AV Europe still has a post-office box for receiving mail, but when asked where it was he replied, "I don't know offhand if it's Munich—a Munich or—address. Again, there's no—there's no operations

whatsoever being conducted there. Nothing." To Hardy's knowledge, no one checks AV Europe's post-office box for mail.

**D.    AV Europe's evidence was legally insufficient to negate general-jurisdiction minimum contacts.**

AV Europe bore the burden to prove that AV Europe's principal place of business—i.e., its nerve center—was not in Texas in January 2019 when suit was filed. We conclude that its evidence was legally insufficient to prove this fact. Accordingly, AV Europe did not carry its burden to negate general-jurisdiction minimum contacts in Texas.

### 1.    The Nerve-Center Evidence

Under the nerve-center test, we inquire where AV Europe's officers directed, controlled, and coordinated the company's activities as of January 2019, when suit was filed. *See Ascentium Capital LLC*, 558 S.W.3d at 829, 831.

There is evidence to support implied findings that AV Europe's managing director was Thomas Reichert, a German resident, from July 2016 until September or October 2017, and then Sean Higgins, a United Kingdom resident, until November 2017.

But in November 2017, Hardy became AV Europe's managing director, and he remained managing director when suit was filed in January 2019. The evidence about the location of AV Europe's nerve center during this critical time period is scant.

First, we consider the time period from November 2017 to June 2018, when AV Europe ceased operations:

- We see no evidence showing where AV Europe's headquarters, if any, was during this time period.

- Hardy testified that his responsibilities were to oversee operations and ensure compliance with the German government.

- Although Hardy twice went to Germany on AV Europe business, we see no evidence that Germany was the place from which he or any other officers directed, controlled, and coordinated AV Europe's activities.

- Hardy testified that in around May or June 2018 "we made the decision" to wind down AV Europe, but we see no evidence showing who else was involved in this decision or, more importantly, where the decision was made.

- Hardy testified that he moved to Texas in 2005, maintained a residence in Texas from 2005 to 2018, was a New York resident for an unspecified "period of time," and began living in Texas full-time in July 2018. This evidence does not support a reasonable inference that from November 2017 to June 2018 Hardy controlled AV Europe's operations from any particular location, much less one outside of Texas.

We conclude that the evidence is legally insufficient to show that AV Europe's nerve center was outside of Texas from November 2017 to June 2018.

As to the remaining time period, June 2018 until the filing of suit in January 2019, the trial court could credit Hardy's declaration testimony that "AV Europe has conducted no business since approximately June 2018 and has no employees." However, Hardy's declaration and deposition also established the following additional facts:

- Hardy is still AV Europe's managing director.

- Hardy has lived in Texas full-time since July 2018.

- "Following the cessation of its business, AV Europe shipped to HW&B and HW&B received all unsold product and credited AV Europe's account receivable for returned product." (Hardy declaration.)

- AV Europe "has been winding down." (Hardy declaration.)

- AV Europe has not been formally dissolved.

Thus, AV Europe's own evidence shows that its managing director has lived in Texas full-time since July 2018. It also shows that since June 2018 AV Europe "has been winding down," which implies some level of activity, and that its activities have included at least the return of unsold products to HW&B. We see no evidence showing the location from which Hardy or any other AV Europe officer (if any) controlled these activities. We therefore conclude that the evidence was legally insufficient to show that AV Europe's nerve center was outside of Texas from June 2018 until the filing of suit in January 2019.

### 2. AV Europe's Arguments

AV Europe cites the statement in Hardy's declaration that "AV Europe does not [have] and has never had a principal place of business in Texas." However, this statement is conclusory and, thus, not probative evidence unless supported by additional facts. *See* TEX. R. CIV. P. 120a(3) (affidavits "shall set forth specific facts as would be admissible in evidence"); *Ennis v. Loiseau*, 164 S.W.3d 698, 703–04 (Tex. App.—Austin 2005, no pet.) (statements such as "[a]s an individual, I do not have any continuing or systematic contacts with Texas" were conclusory); *see also*

*Rogers v. Zanetti*, 517 S.W.3d 123, 130 (Tex. App.—Dallas 2015) (conclusory testimony is no evidence), *aff'd*, 518 S.W.3d 394 (Tex. 2017). We conclude that Hardy's declaration does not contain the facts necessary to make his assertion non-conclusory.

Hardy's declaration focuses on the absence of general business activity in Texas, but under the nerve-center test the relevant fact is where the company's officers exercise their control over the company—not where the company's business activity occurs. Hardy's declaration does not show that AV Europe was not controlled from Texas after Hardy became managing director. Indeed, his declaration specifies only that he had no managerial role in AV Europe while his two predecessors served as managing director: "While [AV Europe] was operating and during the time Reichert and Higgins served as Geschäftsführer (Managing Director), neither me personally nor HW&B Enterprises had any managerial role with respect to AV Europe." He acknowledged in his deposition that AV Europe still had operations "[f]or a very brief time" after he became managing director, but he did not specify where he carried out his role. Thus, Hardy's statement that AV Europe has never had a principal place of business in Texas is conclusory and not probative.

AV Europe also points out that appellants' brief includes a statement that "[b]y June 2018, AV Europe did little more than maintain its records." But this is not a concession that AV Europe had *no* activities after June 2018—only that those

activities were minimal. And appellants' brief also asserts that "AV Europe's management and operation have been conducted from Texas" since the collapse of its business in Germany. The place of management, not operation, is what matters in a nerve-center analysis.

AV Europe also argues that "the nerve center test does not apply to defunct companies like AV Europe." But as discussed above, AV Europe has not shown itself to be defunct; the evidence shows that it exists, has a managing director, has been "winding down," and has conducted activities at least to the extent of shipping products to HW&B even after ceasing business operations. Thus, AV Europe's proposition regarding defunct companies does not apply to the facts of this case even if it is a correct statement of the law.

AV Europe also points to Hardy's deposition testimony, given after suit was filed, that his managing-director position currently has no responsibilities because "AV Europe no longer has operations." But as discussed above, the relevant time period is the time leading up to the filing of suit, and the evidence (1) shows that AV Europe engaged in some activities after Hardy became managing director in November 2017 and (2) does *not* show where Hardy or any other officer controlled AV Europe's activities during the critical November 2017–January 2019 time period. Thus, Hardy's deposition testimony does not defeat general jurisdiction.

### 3.    Conclusion

We hold that AV Europe produced legally insufficient evidence to negate general-jurisdiction minimum contacts with Texas.

### E.    AV Europe failed to establish that the exercise of personal jurisdiction over it would offend traditional notions of fair play and substantial justice.

Appellants also argue that the exercise of personal jurisdiction over AV Europe will not offend traditional notions of fair play and substantial justice. Although the Supreme Court recently indicated that the "fair play and substantial justice" test need not be met if general-jurisdiction minimum contacts are present, *see Daimler AG*, 571 U.S. at 139 n.20, appellants do not make this argument, so we do not consider it, *see State Bar of Tex. v. Evans*, 774 S.W.2d 656, 658 n.5 (Tex. 1989) (per curiam). Nevertheless, we agree with appellants' argument as presented.

AV Europe bore the burden of presenting a compelling case that the circumstances make the exercise of jurisdiction over it unreasonable. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 878–79 (Tex. 2010). For an international defendant such as AV Europe, we consider factors such as (1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the international judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the several nations' shared interest in furthering fundamental substantive social policies. *See id*. at 878.

We see no evidence that defending this case will place any unusual burden on AV Europe. *See id*. at 879 (noting that distance alone cannot ordinarily defeat jurisdiction). AV Europe does not dispute appellants' allegation that one plaintiff is a Texas corporation with its principal place of business in Texas; thus, Texas has some interest in adjudicating this dispute. *See id*. Appellants have an interest in trying their claims against all defendants in a single lawsuit rather than piecemeal, and the international judicial system has a similar interest in avoiding unnecessarily multiplying lawsuits. *See id*. (it is more efficient to adjudicate an entire case in the same place). The last fair-play factor, regarding substantive social policies, has no obvious application here.

We conclude that AV Europe has not presented a compelling case that the circumstances make the exercise of jurisdiction over it unreasonable.

**F.      Conclusion: We sustain appellants' first issue.**

For the foregoing reasons, we sustain appellants' first issue and conclude that the trial court erred by sustaining AV Europe's special appearance. We need not decide whether AV Europe successfully negated specific-jurisdiction minimum contacts or whether the trial court erred by not allowing appellants to amend their pleadings.

## V.    Disposition

We reverse the trial court's order sustaining AV Europe's special appearance, render judgment denying AV Europe's special appearance, and remand the case to the trial court for further proceedings consistent with this opinion.


/Dennise Garcia/
DENNISE GARCIA
JUSTICE

200558F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

FOREVER LIVING PRODUCTS INTERNATIONAL, LLC, A NEVADA LIMITED LIABILITY COMPANY, AND ALOE VERA OF AMERICA, INC., A TEXAS CORPORATION, Appellants

On Appeal from the 191st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-00270. Opinion delivered by Justice Garcia. Justices Myers and Partida-Kipness participating.

No. 05-20-00558-CV          V.

AV EUROPE GMBH, A GERMAN LIMITED LIABILITY COMPANY, Appellee

In accordance with this Court's opinion of this date, the trial court's "Order Sustaining AV Europe GmbH's Objection to Jurisdiction [sic]" is **REVERSED** and judgment is **RENDERED** denying AV Europe GmbH's First Amended Special Appearance to Present Motion Objecting to Jurisdiction. We **REMAND** the case for further proceedings consistent with the opinion.

It is **ORDERED** that appellants Forever Living Products International, LLC, A Nevada Limited Liability Company, and Aloe Vera Of America, Inc., A Texas Corporation recover their costs of this appeal from appellee AV Europe GmbH, A German Limited Liability Company.


Judgment entered July 30, 2021

–19–