**REVERSE AND RENDER; Opinion Filed November 1, 2022**



In The
**Court of Appeals
Fifth District of Texas at Dallas**

_____

**No. 05-22-00188-CV**

_____

**METROPCS TEXAS, LLC, Appellant
V.
ZAHRA AMIRI, INDIVIDUALLY AND ON BEHALF OF THE ESTATE
OF MAHIR A. AMIRI AND ON BEHALF OF MINOR CHILDREN, Z.A.,
F.A., AND H.A.; SHIR A. AMIRI; AND FARZANA AMIRI, Appellees**

**On Appeal from the County Court at Law No. 4
Dallas County, Texas
Trial Court Cause No. CC-20-04875-D**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Schenck

In this interlocutory appeal, MetroPCS Texas, LLC appeals the trial court's

order denying its special appearance. We conclude the trial court lacked specific or

general jurisdiction over MetroPCS Texas. Accordingly, we reverse the trial court's

order denying MetroPCS Texas's special appearance and render judgment granting

the special appearance and dismissing appellees' claims against MetroPCS Texas.

Because the dispositive issues in this case are settled in law, we issue this

memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In September 2018, Mahir Amiri was employed by a security company to monitor and protect the premises of a Texaco gas station and a strip mall. Mr. Amiri's employer was, in turn, hired by the property owner of the strip mall following the August 2018 entry of an agreed injunction in an action brought by the City of Dallas. In that action, the City alleged (and the property owner disputed) that over the eighteen months preceding the agreed order, multiple instances of incidents of illegal drug use, aggravated assault, robbery, and murder had occurred at the strip mall.[1]

Throughout the months of September, October, November, and December of 2018, Mr. Amir reported several verbal assaults and threats, including threats of physical violence and death by individuals in the area. At approximately 10 p.m. on December 20, Mr. Amiri was shot multiple times in his back while standing in the parking lot of the strip mall, resulting in severe injuries requiring multiple surgeries and care in specialized facilities before his death in April 2021.

In November 2020, Mr. Amiri's wife[2] filed suit against multiple defendants, including the unknown assailant who shot Mr. Amiri, the security company who

[1] That order decreed, among other things, the property owner provide and maintain at least one armed and uniformed security officer and notify its tenants of any criminal activity occurring at the strip mall.

[2] Mrs. Zahra Amiri filed her suit on her own behalf, as well as on behalf of Mr. Amiri and their three minor children, and Mr. Amiri's parents, Shir M. Amiri and Farzana Amiri later joined her suit as plaintiffs (collectively, "Appellees"). The original petition named Mrs. Amiri as Mr. Amiri's guardian. Her seventh amended petition, live at the time of the challenged order, noted Mr. Amiri's death in 2021 and named Mrs. Amiri as administrator of his estate.

employed him, and several individuals and business entities she alleged to own or operate the gas station, the strip mall, and stores in the strip mall. According to the petition, MetroPCS Texas is a Delaware limited liability company doing business in Texas. MetroPCS did not own the property, operate the store at the location or employ Mr. Amir. Rather, its connection with the event is with its licensing another company to use its name. Specifically, it entered into a dealer agreement with another defendant, Chris & Steve, Inc., to market and sell its products and services in the general area. Chris & Steve, Inc. in turn entered into a subdealer agreement with yet another defendant, K Dynasty, permitting it to operate a MetroPCS store located in the strip mall. By these arrangements, K Dynasty was permitted to use the name and sell products and services associated with MetroPCS. K Dynasty, in turn, rented space from the property owner who, in turn, hired the security company that hired Mr. Amir.

MetroPCS Texas filed, and later amended, a special appearance, urging that it is not personally subject to either general or specific jurisdiction in this case. Appellees responded that the trial court had both general and specific personal jurisdiction over MetroPCS Texas. After conducting a hearing, the trial court subsequently signed an order overruling MetroPCS Texas's amended special appearance without specifying which type of personal jurisdiction it found. This interlocutory appeal followed.

**DISCUSSION**

## I. Personal Jurisdiction

Texas courts may exercise personal jurisdiction over a nonresident defendant only if (1) the Texas long-arm statute permits the exercise of jurisdiction and (2) the assertion of jurisdiction satisfies constitutional due-process guarantees. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). The long-arm statute provides, in relevant part, that in addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident commits a tort, in whole or in part, in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042. Personal jurisdiction over a nonresident defendant satisfies constitutional due-process guarantees when the nonresident defendant has established minimum contacts with the forum state and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Kelly*, 301 S.W.3d at 658.

Minimum contacts are established when the nonresident defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Id.* at 657–58. In determining purposeful availment, we consider (1) the defendant's own actions but not the unilateral activity of another party, (2) whether the defendant's actions were purposeful rather than random, isolated, or fortuitous, and (3) whether the defendant sought some benefit, advantage, or profit by availing itself of the privilege of doing business in Texas. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777,

785 (Tex. 2005). The focus is the relationship among the defendant, the forum, and the litigation. *Id*. at 790 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). In this analysis, we do not assess the quantity of the contacts, but rather their nature and quality. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013).

A defendant's contacts with a forum can give rise to either specific or general jurisdiction. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009). A court has general jurisdiction over a nonresident defendant whose affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State. *See TV Azteca v. Ruiz*, 490 S.W.3d 29, 37 (Tex. 2016) (citing *Daimler v. Bauman*, 571 U.S. 117, 127 (2014)). This test requires substantial activities within the forum and presents a more demanding minimum contacts analysis than for specific jurisdiction. *Id.* When a court has general jurisdiction over a nonresident, it may exercise jurisdiction even if the cause of action did not arise from activities performed in the forum state. *Id.*

By contrast, courts may exercise specific jurisdiction when the defendant's alleged liability arises from or is related to its activities conducted within the forum. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 576 (Tex. 2007); *accord Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and

the forum state. *Moki Mac*, 221 S.W.3d at 579. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Id.* at 585; *accord Walden v. Fiore*, 571 U.S. 277, 284 (2014). The operative facts of the litigation are those facts the trial court will focus on to prove the nonresident defendant's liability. *See Jani-King Franchising, Inc. v. Falco Franchising, S.A.*, No. 05-15-00335-CV, 2016 WL 2609314, at *5 (Tex. App.—Dallas May 5, 2016, no pet.) (mem. op.), *overruled on other grounds by Steward Health Care Sys. LLC v. Saidara*, 633 S.W.3d 120, 129 (Tex. App.—Dallas 2021, no pet.); *see also Saidara*, 633 S.W.3d at 126.

For specific jurisdiction, we analyze the defendant's contacts on a claim-by-claim basis to determine whether each claim arises out of or is related to the defendant's minimum contacts. *See id.* But, when all the claims arise from the same forum contacts, a claim-by-claim analysis is not required. *See Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 18 (Tex. 2021).

Because the minimum-contacts test is intended to ensure that the defendant could reasonably anticipate being sued in the forum's courts, foreseeability is an important consideration in the analysis. *TV Azteca v. Ruiz*, 490 S.W.3d 29, 46 (Tex. 2016) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002)). But foreseeability alone will not support personal jurisdiction. *Id.* Instead, the defendant

must reasonably anticipate being sued in the forum *because of* actions the defendant "purposefully directed toward the forum state." *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion)). While a defendant's knowledge that its actions will create forum contacts may support a finding that the defendant purposefully directed those actions at the forum, that knowledge alone is not enough. *Id.*

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *See Moncrief Oil*, 414 S.W.3d at 154. We undertake this evaluation in light of the following factors, when appropriate: (1) the burden on the defendant; (2) the interests of the forum in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the international judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several nations in furthering fundamental substantive social policies. *Id.* at 155 (citing *Asahi*, 480 U.S. at 113; *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

The plaintiff bears the initial burden to plead sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *Moki Mac*, 221 S.W.3d at 574. The plaintiff must meet its initial burden on a special appearance by pleading, in its petition, sufficient allegations to invoke jurisdiction under the Texas long-arm statute. *See Saidara*, 633 S.W.3d at 129. Once the plaintiff has pleaded sufficient

jurisdictional allegations, a defendant who contests the trial court's exercise of personal jurisdiction bears the burden of negating all bases of jurisdiction alleged by the plaintiff. *Moki Mac*, 221 S.W.3d at 574.

The ultimate question of whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Id.* And because jurisdiction is a question of law, an appellate court reviews a trial court's determination of a special appearance de novo. *Old Republic Nat'l Title Ins. Co. v. Bell*, 549 S.W.3d 550, 558 (Tex. 2018). When, as here, the trial court did not issue findings of fact and conclusions of law, all relevant facts that are necessary to support the judgment and supported by evidence are implied. *Id.* When the appellate record includes the reporter's and clerk's records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). When the relevant facts in a case are undisputed, an appellate court need not consider any implied findings of fact and considers only the legal question of whether the undisputed facts establish Texas jurisdiction. *Bell*, 549 S.W.3d at 558.

## II. Application of Law to Facts

### A. Specific Jurisdiction

We begin our analysis with Appellees' claims against MetroPCS Texas. Appellees asserted several claims against defendants, including MetroPCS Texas, referred to collectively as "Strip Mall Businesses," specifically negligence,

negligence per se, gross negligence, premises liability, common law public nuisance, statutory common nuisance, statutory public nuisance, civil conspiracy, joint enterprise, aiding and abetting, and wrongful death. All of these claims arise from the same forum contacts and thus a claim-by-claim analysis is not required. *See Luciano*, 625 S.W.3d at 18.

Appellees' theory of liability underlying each claim against MetroPCS Texas is that MetroPCS Texas owed a duty to Appellees as an owner, operator, or controller of premises and breached that duty by causing, contributing to, or refusing to abate a public nuisance on its own respective properties or the properties it operated and controlled. The public nuisance in question was alleged to be systemic and pervasive criminal activities—to wit, possession, sale, and use of illegal drugs, aggravated assault, robbery, and murder. Appellees alleged MetroPCS Texas knew or should have known about these activities and failed to remove itself from the location or otherwise cease or prevent—or warn the general public about—these activities because it was somehow benefited by them. Indeed, Appellees alleged that MetroPCS Texas

> operated [its] premises as [a] habitual criminal propert[y], and knew or should have known that criminal conduct against Mr. Mahir Amiri was both imminent and foreseeable because [it] had notice since at least March of 2016 that the area was a hub for criminal behavior by the residents of the [nearby apartment complex] . . . both during and after normal business hours.

The specific contacts that Appellees argue are connected to their suit are particular terms contained in MetroPCS Texas's dealer agreement with Chris &

Steve and in the subdealer agreement between Chris & Steve and K Dynasty. Appellees' petition urged that "MetroPCS Texas asserted or had a contractual obligation to assert control over the location and manner in which Defendants Chris & Steve [] and K Dynasty Investment operated the MetroPCS storefront." In particular, Appellees point to contractual terms that required Chris & Steve to notify MetroPCS in writing of any order, injunction, or decree involving Chris & Steve or its business; permitted MetroPCS Texas to terminate the dealer agreement if Chris & Steve failed to operate the store in a manner—including "safety issues"—that reflected positively on MetroPCS Texas;[3] and required MetroPCS Texas's approval of the store location. They also refer to a contract addendum indicating MetroPCS Texas's 2017 approval of the store location.[4]

The subdealer agreement explicitly provides that (1) it will terminate at MetroPCS Texas's sole discretion when MetroPCS Texas notifies Chris & Steve that the storefront location is no longer approved, and (2) MetroPCS Texas "is a

---

[3] In particular, the dealer agreement provided:

MetroPCS [Texas] may terminate this Agreement at any time . . . if any of the following occurs:

. . . .

(d) Dealer fails to operate in a manner which reflects positively on MetroPCS [Texas]. This includes, but is not limited to, safety issues, disrepair, cleanliness, confidentiality, online postings or actions inconsistent with a professional business establishment;

[4] At the hearing on the special appearance and during oral argument, Appellees contended more specifically and citing the 2018 dealer agreement with Chris & Steve attached to the amended special appearance, as opposed to the 2014 agreement cited in Appellees' response, that MetroPCS Texas could have "require[d] [Chris & Steve] to staff a particular Storefront Location with a minimum of two (2) employees at all times during store operating hours due to ongoing security and safety concerns."

third-party beneficiary of the [subdealer agreement between Chris & Steve and K Dynasty], and may take any equitable or legal action required to enforce its provisions and the terms and conditions of the Dealer Agreement."

Thus, the only arguments Appellees presented are that the dealer and subdealer agreements allowed MetroPCS Texas to insist on the store's operation in a manner that reflects positively on MetroPCS Texas and to approve of the location of the store.

As noted, Appellees' claims must arise out of or relate to the defendant's contacts with the forum. *See Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1025 (2021). Or put just a bit differently, there must be some affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulations. *See id.* Appellees point to no action (or inaction for that matter) on the part of MetroPCS in allegedly failing to exercise its right to terminate or alter its relations with the affiliated entities that would have affected the security at the strip mall generally or in the hours at issue in this case. Instead, the subdealer/tenant (KDynasty) had secured a security arrangement from the property owner in the form of retaining armed security via Mr. Amir's employer and, in turn, Mr. Amir himself. Nothing in any of the contracts at issue authorized (much less required) MetroPCS to provide armed security for visitors to the strip mall in general or the armed security retained by its subdealer's landlord in particular.

Further, the contractual rights that Appellees rely on in seeking to establish specific jurisdiction over MetroPCS Texas would not give rise to any cognizable claim of liability in tort make the prospect of defending against it forseeable. As a rule, a person has no legal duty to protect another from the criminal acts of a third person. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 756 (Tex. 1998). An exception is that one who controls the premises has a duty to use ordinary care to protect invitees from criminal acts of third parties if he knows or has reason to know of an unreasonable and foreseeable risk of harm to the invitee. *See id.* The exception applies, of course, to a landlord who retains control over the security and safety of the premises. *See id.* "But a contracting party's right to order work stopped or fire an independent contractor for non-compliance does not create liability for everything the independent contractor does (or fails to do)." *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 293 (Tex. 2004). MetroPCS was, of course, not the landlord or property owner. Neither was it even a tenant. Its connection to the tragic incident here was its direct contractual license relationship with one party and its subrelation to another.

It is undisputed Mr. Amiri (who had been hired to serve as the armed security himself) was assaulted in the parking lot, not in the store itself, and none of the contractual rights could arguably grant MetroPCS Texas the right to control the

parking lot.[5]  It is undisputed that the property owner maintained an armed security guard, and nothing in the petition or the evidence would suggest to a person of ordinary intelligence to add additional security or to foresee litigation for failure to do same.[6]  *See Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549–50 (Tex. 1985) ("Foreseeability means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others.").

Appellees attempt to draw an analogy between the facts of *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S.Ct. 1017, 1022 (2021), and the facts of this case.  In *Ford*, the plaintiffs in two separate cases consolidated on appeal brought suit for product liability stemming from car accidents, and the defendant did substantial business in the forum states, "among other things, advertising, selling, and servicing the model of vehicle the suit claims is defective."  *See id.*  The defendant conceded it did substantial business in the forum states and that it actively seeks to serve the market for automobiles and related products in those states.  *See id.* at 1026.  What the defendant disputed was whether its activities in those states gave rise to the plaintiffs' claims.  *See id.*  The United States Supreme Court noted

---

[5] For that matter, there is no evidence MetroPCS Texas had any control over the store *at the time of the assault*, given that the shooting occurred at approximately 10 p.m., and the contractual provision regarding the requirement of additional staff specified such employees be present "during store operating hours."

[6] At the hearing on the special appearance and during oral argument, Appellees contended more specifically and citing the 2018 dealer agreement with Chris & Steve attached to the amended special appearance, as opposed to the 2014 agreement cited in Appellees' response, that MetroPCS Texas could have "require[d] [Chris & Steve] to staff a particular Storefront Location with a minimum of two (2) employees at all times during store operating hours due to ongoing security and safety concerns."  However, nothing in the petition or the evidence would suggest to a person of ordinary intelligence to add an additional employee in the store during operating hours or to foresee suit for failure to do same.

that the requirement of a connection between a plaintiff's suit and a defendant's activities is not limited to causation but may instead relate to the defendant's contacts with the forum. *See id.* Thus, where the defendant serves a market for a product in the forum state and the product malfunctions there, specific jurisdiction attaches. *See id.* at 1027.

A key distinction here is that none of Appellees' claims relate to allegations that a product MetroPCS Texas sold was defective. Instead, what Appellees contend is that MetroPCS Texas sold products and services in a location known to be frequented by criminals and gangs, that it knew its products and services were preferred by such persons, and that it refused to exercise any contractual right to remove its products and services from that location. But, again, the claims are that Mr. Amiri was shot in the parking lot near strip mall at night, not in the store during store hours, and none of the alleged contacts of MetroPCS Texas would give rise to foreseeability or liability.[7] Accordingly, we reject Appellees' assertion that *Ford* requires a finding of specific jurisdiction.

We conclude any finding of specific jurisdiction was in error.

---

[7] In order for *Ford* to be truly analogous, that case must have involved a similar allegation that plaintiffs were injured by criminals driving defendant's cars and that the defendant was responsible because it knew that criminals preferred to purchase its cars. As exciting and, no doubt, defamatory as such an allegation would be, it was not in fact made in that case. *See Ford*, 141 S.Ct. at 1022.

### B. General Jurisdiction

Although the "paradigm" forums in which a corporate defendant is "at home" are the corporation's place of incorporation and its principal place of business, the United States Supreme Court has recognized the possibility of an "exceptional case," a corporate defendant's operations in another state that are "so substantial and of such a nature as to render the corporation at home in that State." *See BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558 (2017). Appellees do not allege in their brief that such an exception case exists here, but because they argued as such to the trial court, because the trial court did not specify which jurisdiction it found, and because MetroPCS Texas challenges any such finding on appeal, we consider that argument here.

In their petition, Appellees alleged MetroPCS Texas "is a foreign limited liability company doing business in the State of Texas." The petition alleged MetroPCS Texas had headquarters located in Richardson, Texas, on which it paid local and Dallas County taxes. Appellees further alleged the "main purpose" of MetroPCS Texas is to enter into authorized dealer agreements with Texas entities in the State of Texas and that it sells its products in the Texas marketplace through numerous authorized dealer agreements. Finally, Appellees alleged that MetroPCS

Texas's contacts with Texas are so continuous and systematic that it is essentially at home in Texas.[8]

We conclude Appellees met their minimum pleading requirement. *See Saidara*, 633 S.W.3d at 127 (noting minimum pleading requirement satisfied by an allegation that nonresident defendant is doing business in Texas or committed tortious acts in Texas). We now examine whether Metro PCS Texas has met its burden to negate all potential bases for personal jurisdiction that exist in Appellees' pleadings. *See Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

MetroPCS Texas urges, and offered evidence, it is neither incorporated nor headquartered in Texas and that it is a Delaware limited liability company with a principal place of business in the state of Washington. Metro PCS also offered evidence denying that it maintains any corporate business records in Texas; that it holds any member or shareholder meetings in Texas; that it has any employees, officers, or directors in Texas; or that it owns or leases any real property in Texas. As for its Richardson office, MetroPCS Texas conceded its dealer agreement lists a

---

[8] Appellees also allege MetroPCS Texas's principal office was located in Texas for almost a decade before moving to Washington "sometime in 2014." Although neither this Court nor any other controlling authority appears to have directly commented on whether evidence of a corporation's past place of domicile may be considered in considering whether that defendant is subject to general jurisdiction, one of our sister courts of appeals has done so, and we agree that evidence "[t]hat Texas was once the company's only place of business is entitled to little weight." *Ascentium Capital LLC v. Hi-Tech the Sch. of Cosmetology Corp.*, 558 S.W.3d 824, 831 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447–48 (1952)). Indeed, as recently noted by the United States Supreme Court, "General jurisdiction . . . extends to any and all claims brought against a defendant . . . . But that breadth imposes a correlative limit: Only a select 'set of affiliations with a forum' will expose a defendant to such sweeping jurisdiction." *Ford Motor*, 141 S.Ct. at 1024 (quoting *Daimler*, 571 U.S. at 137).

business address located in Richardson, but it offered evidence that until early 2020, it leased office space at which MetroPCS Texas only stored personal business property in the form of furniture, office fixtures, and office equipment. The parties attached as evidence the 2014 and 2018 dealer agreements between MetroPCS Texas and Chris & Steve, which both required any contractually required notices to MetroPCS Texas to be sent to an address in Richardson. After reviewing the allegations and the evidence, we conclude MetroPCS Texas negated the allegations that it maintains headquarters in Texas. *See Searcy*, 496 S.W.3d at 66.

As for Appellees' allegations that MetroPCS Texas's "main purpose" appears to be to enter into dealer and subdealer agreements in Texas, thus "taking full advantage of the Texas marketplace to make money," MetroPCS Texas offered evidence that until June 2020, it contracted with dealers and subdealers in New Mexico, Texas, and Louisiana. Thus, to the extent we may infer MetroPCS Texas's purpose was to do business in New Mexico, Texas, and Louisiana, we note that "a corporation that operates in many places can scarcely be deemed at home in all of them." *See Tyrrell*, 137 S.Ct. at 1559.

Accordingly, we conclude there is no credible argument that MetroPCS Texas maintains a presence in Texas and thus any finding of general jurisdiction was in error.

We sustain MetroPCS Texas's issue and conclude the trial court erred by denying MetroPCS Texas's special appearance.

–17–

## CONCLUSION

We reverse the trial court's order denying MetroPCS Texas's special appearance and render judgment granting the special appearance and dismissing appellees' claims against MetroPCS Texas.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

220188F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

METROPCS TEXAS, LLC,
Appellant

No. 05-22-00188-CV     V.

ZAHRA AMIRI, INDIVIDUALLY
AND ON BEHALF OF THE
ESTATE OF MAHIR A. AMIRI
AND ON BEHALF OF MINOR
CHILDREN, Z.A., F.A., AND H.A.;
SHIR A. AMIRI; AND FARZANA
AMIRI, Appellees

On Appeal from the County Court at
Law No. 4, Dallas County, Texas
Trial Court Cause No. CC-20-04875-
D.
Opinion delivered by Justice
Schenck. Justices Reichek and
Goldstein participating.

In accordance with this Court's opinion of this date, we **REVERSE** the trial court's order denying METROPCS TEXAS, LLC's special appearance, and we **RENDERED** judgment:
> granting METROPCS TEXAS, LLC's special appearance and dismissing ZAHRA AMIRI, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MAHIR A. AMIRI AND ON BEHALF OF MINOR CHILDREN, Z.A., F.A., AND H.A.; SHIR A. AMIRI; AND FARZANA AMIRI's claims against it.

It is **ORDERED** that appellant METROPCS TEXAS, LLC recover its costs of this appeal from appellees ZAHRA AMIRI, INDIVIDUALLY AND ON BEHALF OF THE ESTATE OF MAHIR A. AMIRI AND ON BEHALF OF MINOR CHILDREN, Z.A., F.A., AND H.A.; SHIR A. AMIRI; AND FARZANA AMIRI.

Judgment entered this 1st day of November 2022.